**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Rodger Joseph PEREA, Defendant–Appellant.**

No. 03CA1750.

Colorado Court of Appeals, Div. V.

July 28, 2005.

Certiorari Denied Jan. 23, 2006.

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jami L. Vigil, Deputy State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Rodger Joseph Perea, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of possession of a schedule II controlled substance. We affirm.

The police observed defendant smoking a marijuana cigarette while he was riding with two cousins and a friend in a car. The police pulled the car over, asked defendant to step out, and conducted a pat-down search of him. When the police felt a bulge in his sock and lifted up defendant's pant leg, a small baggie containing a round ball of a "white powdery looking substance" fell onto the street. Upon learning that he would be arrested for

possessing what was suspected to be cocaine, defendant "became loud and hysterical."

When the driver of the car could not produce a license or proof of insurance, the police ordered the car towed and conducted a routine inventory search of it at the scene. In the course of that search, a baggie containing eight grams of marijuana was discovered in the center console between the driver's and front passenger's seats.

Subsequent tests revealed the baggie with the white powdery substance in it contained roughly 8.2 grams of cocaine. Defendant was charged with one count of possession of a schedule II controlled substance and one count of possession of a schedule II controlled substance with the intent to distribute.

Two of the other three young men in the car with defendant testified at defendant's trial. The driver, a cousin of defendant, could not be located. The driver's thirteen-year-old younger brother (younger cousin), however, testified that defendant and a friend came over to his house earlier that evening. After eating dinner, defendant went downstairs, where the younger cousin saw him twist a baggie containing a yellowish, round substance, and place that baggie in his pocket; the younger cousin also observed that defendant was standing next to a table that had a plate and a razor blade on it. According to the younger cousin, when the police stopped their car, defendant "reached in his right pocket and put something in his right sock."

Defendant testified that he had gone over to his aunt's house to "hang out" with the driver (missing cousin). While the missing cousin showered and got ready in the basement, defendant remained upstairs, sitting at the kitchen table with his aunt; according to defendant, he never went down to the basement. After dinner, defendant and the two cousins went to pick up defendant's friend, the fourth person in the car.

Defendant testified that the missing cousin invited him to smoke a marijuana cigarette that was in the ashtray of the car. He related that, when the car was being pulled over, the missing cousin tossed a baggie at

him and said, "I'm going to jail for a long time if I have it on me." Although he initially protested, defendant ended up taking the baggie and hiding it in his sock. According to defendant, he did not know what was in the baggie until the police told him it was cocaine.

The testimony of defendant's friend largely substantiated that of defendant. He testified that, because it was dark, he could not tell what the missing cousin had thrown at defendant; he also could not tell what defendant did with it.

The jury found defendant guilty on the possession count, but acquitted him on the possession with the intent to distribute count.

## I. Knowledge of the General or Precise Nature of a Controlled Substance

Defendant contends that reversal is required because the trial court allowed the prosecution to misstate, and because the trial court did not adequately instruct the jury on, the elements of the offense of which he was convicted. We disagree.

█ Section 18–18–405(1)(a), C.R.S.2004, provides that "it is unlawful for any person knowingly to ... possess ... a controlled substance." The "knowing" element applies both to knowledge of possession, *People v. Ceja*, 904 P.2d 1308, 1310 (Colo.1995), and to knowledge that the thing possessed is a controlled substance. *People v. Theel*, 180 Colo. 348, 350, 505 P.2d 964, 965 (1973).

The issue in this case is whether, to be convicted of this offense, a defendant need know, as the prosecution argued, only that he or she was in possession of a controlled substance or, as defendant argued, he or she must be shown to know the precise controlled substance possessed, here, cocaine. Nothing in the plain language of the statute appears to answer this question.

In 1978, a division of this court construed a predecessor version of § 18–18–405(1)(a); there, it concluded, in the context of dispensing drugs, that "[e]ven if defendant were mistaken as to the precise chemical nature or name of the dangerous drug he dispensed, or believed that he was dispensing [drug A] when he was actually dispensing [drug B],

his conviction was warranted so long as he intended to dispense a dangerous drug." *People v. Clark,* 41 Colo.App. 456, 457, 589 P.2d 1379, 1380 (1978).

In 1981, the General Assembly adopted what is now § 18–18–405, as part of a version of the Uniform Controlled Substances Act. The purpose of the Uniform Act is to "maintain uniformity between the laws of the several States and those of the federal government;" to date, forty-eight states have adopted some version of the Uniform Act. *See People v. Abiodun,* 111 P.3d 462, 466 n. 3 (Colo.2005)(quoting Unif. Controlled Substances Act, Prefatory Note, 9 U.L.A. 5 (1997)).

■ For this reason, we may look to interpretations of like federal and state statutes for guidance in interpreting § 18–18–405. *See Szaloczi v. John R. Behrmann Revocable Trust,* 90 P.3d 835, 838–39 (Colo.2004); *People v. Rivera,* 56 P.3d 1155, 1163 (Colo.App. 2002).

Federal authorities are uniform in recognizing that a defendant need not know the exact nature of the substance in his or her possession, but only that it was a controlled substance of some kind. *See, e.g., United States v. Martin,* 274 F.3d 1208, 1210 (8th Cir.2001); *United States v. Ramirez-Ramirez,* 875 F.2d 772, 774 & n. 1 (9th Cir. 1989); *United States v. Cheung,* 836 F.2d 729, 731 (1st Cir.1988); *United States v. Berick,* 710 F.2d 1035, 1040 (5th Cir.1983); *see also* 2B Fed.-JI § 64.15 (5th ed.2000)("it is not necessary for the government to prove that the defendant knew the precise nature of the controlled substance .... The government must prove beyond a reasonable doubt, however, that Defendant [X] did know that some type of controlled substance was [possessed].").

Most of the state courts that have considered this question have reached the same conclusion. *See, e.g., State v. Engen,* 164 Or.App. 591, 993 P.2d 161, 170 (1999)(characterizing the level of agreement as "a consensus"); *State v. Sartin,* 200 Wis.2d 47, 546 N.W.2d 449, 455 (1996)(noting that the "majority of courts that have addressed this issue agree that in drug possession or delivery cases, the defendant's knowledge that he had

a controlled or illegal substance is all that the State need prove; there is no requirement to prove the defendant knew the exact nature of the substance"). And there is good reason for not imposing such a requirement:

> [I]nsulating from criminal liability those defendants who knowingly deal in prohibited controlled substances, but are ignorant, mistaken, or willing to misrepresent the exact nature or chemical name of the substance which they traffic, is contrary to public policy....
>
> The requirement that a defendant "knowingly" distribute or possess a controlled substance adequately protects those individuals who may innocently become involved in a drug transaction by inadvertence or accident. However, one who knowingly engages in the trade of controlled substances should not profit by feigning ignorance, and subsequently relying on the State's potential inability to prove knowledge of the exact substance involved.

*State v. Sartin, supra,* 546 N.W.2d at 456.

■ We are persuaded by these authorities, and, accordingly, we construe § 18–18–405 to require only that a person know that he or she possesses a controlled substance, and not that he or she know the precise controlled substance possessed.

Thus construing the statute, we find no error in the prosecution's arguments regarding, or the trial court's instructions on, the law.

In reaching this conclusion, we necessarily reject defendant's reliance on *People v. Quick,* 190 Colo. 171, 172, 544 P.2d 629, 629–30 (1976); *People v. Eades,* 187 Colo. 74, 77, 528 P.2d 382, 384 (1974); and *People v. Larsen,* 180 Colo. 140, 142, 503 P.2d 343, 345 (1972). While these cases stand for the proposition that a defendant must know the "nature" of the thing possessed, none of them requires knowledge of the precise controlled substance possessed.

## II. Use of Marijuana–Related Evidence

■ Next, defendant contends that the trial court erred by admitting evidence of a

baggie containing eight grams of marijuana that was found in the center console between the driver's and front passenger's seats. We disagree.

▪ Evidence of other offenses or acts that is part of the criminal episode or transaction with which defendant is charged is "admissible to provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *People v. Quintana,* 882 P.2d 1366, 1373 (Colo. 1994); *see People v. St. James,* 75 P.3d 1122, 1125 (Colo.App.2002)(evidence of defendant's possession of money and victim's drug dealing admissible res gestae evidence providing jury with a full understanding of the events surrounding the crimes and the context in which the crimes occurred).

Here, defendant was charged with both possession of a controlled substance and possession with intent to distribute a controlled substance. He was sitting in the front passenger seat, next to the console where the baggie of marijuana was found. He had been seen smoking marijuana in the car. And the baggie was similar in type to those which (1) the younger cousin had seen him with at the house, containing a yellowish substance, and (2) fell out of his sock when patted down by the police and contained cocaine.

In our view, these circumstances were sufficient to link defendant to the marijuana. *Cf. Maryland v. Pringle,* 540 U.S. 366, 372, 124 S.Ct. 795, 800–01, 157 L.Ed.2d 769 (2003) (reasonable for police to have probable cause to believe that any or all three of the occupants of car had knowledge of, and exercised dominion and control over, cocaine recovered from an accessible area inside the car). And the evidence—particularly that involving the type of packaging used for both the cocaine and marijuana—was relevant and admissible to prove that defendant had possessed both the cocaine and the marijuana with intent to distribute them. *See People v. Valdez,* 56 P.3d 1148, 1150 (Colo.App.2002)(drug paraphernalia, marijuana, and spoon with heroin residue, found during same search that uncovered drugs forming basis of prosecution for possession of Tylenol with codeine and

alprazolam, admissible); *People v. Ornelas,* 937 P.2d 867, 873 (Colo.App.1996)(evidence of defendant's activities and knowledge regarding distribution of other drugs was relevant to prove defendant's knowledge and intent to distribute cocaine).

Consequently, we conclude that the trial court committed no error in admitting this evidence.

### III. Collateral Use of Marijuana

▪ We also reject defendant's contention that the trial court erred in not granting a mistrial after the younger cousin mentioned that defendant had said he was thrown out of his parent's house on a prior occasion for using marijuana.

▪ A mistrial is a drastic remedy and is warranted only when prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. *People v. Kerber,* 64 P.3d 930, 933 (Colo.App. 2002). Absent an abuse of discretion, we will not disturb a trial court's decision to grant or deny a motion for a mistrial. *People v. Scott,* 10 P.3d 686, 689 (Colo.App.2000). A trial court is in a better position than a reviewing court to evaluate any adverse effect that improper testimony might have upon a jury. *People v. Ellis,* 30 P.3d 774, 777–78 (Colo. App.2001).

Here, the trial court denied defendant's motion for mistrial, noting, among other things, that defendant had made no contemporaneous objection or even a request to strike the comment.

In light of other uncontested and admissible evidence of defendant's smoking marijuana (namely, his smoking the marijuana cigarette in the car), we fail to perceive the type of substantial prejudice here that would require a mistrial. Accordingly, we conclude the trial court did not abuse its discretion in denying defendant's motion.

### IV. Sufficiency of Evidence

▪ Defendant contends that the evidence was insufficient to sustain his conviction. We disagree.

In assessing whether there was sufficient evidence to convict a defendant of a charge, we must determine whether a rational fact-finder might accept the evidence, when viewed as a whole and in the light most favorable to the prosecution, as sufficient to find a defendant guilty beyond a reasonable doubt. *See People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999). If there is evidence from which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element. *People v. Caldwell*, 43 P.3d 663, 672 (Colo.App.2001). And where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *See People v. Carlson*, 72 P.3d 411, 416 (Colo.App.2003).

Here, defendant asserts that there was insufficient evidence from which to find that he knowingly possessed a controlled substance. We are not persuaded.

Cocaine was discovered in a baggie in defendant's sock. By his own testimony, defendant had received the baggie when it was tossed to him by his cousin; as he tossed it, the cousin had said, "I'm going to jail for a long time if I have it on me." From the type of baggie tossed to defendant, the statement by the cousin, and defendant's attempt to hide the baggie, a reasonable jury could infer that defendant at the very least knew it was a controlled substance he was hiding.

In addition, defendant's younger cousin related that he had earlier that night observed defendant wrapping a "yellowish, round substance" in a baggie in the basement, while standing near a table with potential instruments for using or dispensing cocaine (the plate and the razor blade), and that defendant had placed that baggie in his pocket.

Taken as a whole and viewed in the light most favorable to the People, the evidence is sufficient to sustain a reasonable conclusion that defendant knowingly possessed a controlled substance.

## V. Prosecutorial Misconduct

We reject defendant's contention that reversal is required because of prosecutorial misconduct during closing argument.

Whether closing argument is improper depends upon the nature of the comments and on whether the jury's attention has been directed to something it is not entitled to consider. *People v. Constant*, 645 P.2d 843, 846 (Colo.1982). Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *People v. Coit*, 961 P.2d 524, 530 (Colo.App.1997).

Counsel may comment on the evidence admitted at trial, the reasonable inferences that can be drawn therefrom, and the instructions of law given to the jury. *People v. DeHerrera*, 697 P.2d 734, 743 (Colo.1985). Counsel may also point to the circumstances that raise questions about or cast doubt on a witness's testimony, and counsel may draw reasonable inferences from the evidence as to the credibility of the witnesses. *Wilson v. People*, 743 P.2d 415, 418 (Colo.1987).

In closing argument, a prosecutor may not denigrate defense counsel, *People v. Jones*, 832 P.2d 1036, 1038–39 (Colo.App. 1991); express a personal opinion as to the credibility of witnesses, *Wilson v. People, supra*; or misstate the evidence, *People v. Eckert*, 919 P.2d 962, 967 (Colo.App.1996).

The determination whether closing argument is improper is a matter committed to the discretion of the trial court. *People v. Coit, supra*.

### A. Denigration of Defense Counsel

Defendant first asserts that his conviction should be reversed because the prosecution stated in rebuttal that defense counsel had misstated the law, thereby denigrating defense counsel before the jury. We do not agree.

"A prosecutor is afforded considerable latitude in replying to an argument by defense counsel. In considering whether prosecutorial remarks are improper, the reviewing court must weigh the effect of those remarks on the trial, and also take into account defense counsel's 'opening salvo.'" *People v. Wallace*, 97 P.3d 262, 269 (Colo. App.2004).

Here, defendant argued that the prosecution was required to prove that he knew the

substance was cocaine, not just some sort of controlled substance. In rebuttal, the prosecution stated, "Let's go back to the instructions and how the defense has misstated the law that—" when defendant objected. The court overruled the objection, noting that "it's argument."

In this context, and in light of defendant's theory of the case, the prosecution's comment that defendant "misstated the law" was not an attack on defense counsel but an attempt to refocus the jury's attention upon the correct, applicable legal standard. Thus, we find no abuse of discretion.

■ Nor did the prosecution denigrate defense counsel by stating, in rebuttal closing argument, that defendant was "blowing smoke today to try to divert you from what's going on in this case, to obscure the facts of the case."

In *People v. Coria*, 937 P.2d 386, 388, 391 (Colo.1997), the supreme court indicated that a prosecutor's references to "Theatrics 101," "smoke and mirrors," and "diversionary tactics," are improper when used as a means to attack or mock defense counsel.

This does not appear to have been the prosecution's purpose in this case. Rather, when viewed in context, the prosecution's comment appears to have been made as a means of focusing the jury's attention on relevant evidence. As such, the comment was not improper. *See People v. Allee*, 77 P.3d 831, 836 (Colo.App.2003)(not improper to ask jury not to be confused by defense tactic; comment was intended to draw jury's focus to relevant evidence, rather than to denigrate opposing counsel); *People v. Ramirez*, 997 P.2d 1200, 1211 (Colo.App. 1999)(not improper to characterize defense argument as "blowing smoke", comment was used as assertion, not that opposing counsel knew defendant's case was not meritorious, but that evidence in support of defendant's innocence lacked substance), *aff'd*, 43 P.3d 611 (Colo.2001); *People v. Serpa*, 992 P.2d 682, 686 (Colo.App.1999)(fair argument to make remarks suggesting that defense evidence was designed as a "diversion" to "sidetrack jury" from central issue of case).

### B. Credibility of Witnesses

■ Defendant next argues that the prosecution, in both its closing and rebuttal arguments, unfairly injected its personal opinion regarding the credibility of the three young men who testified. We disagree.

■ Prosecutors may fairly comment on the evidence, including the defendant's testimony about the events. *People v. Roadcap*, 78 P.3d 1108, 1114 (Colo.App.2003). Counsel may with propriety comment on how well and in what manner a witness measures up to the tests of credibility set forth in the instructions. *See People v. Alengi*, 114 P.3d 11, 17 (Colo.App.2004)(*cert. granted* 2005 WL 1503444, June 27, 2005).

Here, the prosecutor labeled defendant's and defendant's friend's testimony "not credible" and the younger cousin's testimony "truthful," in the context of contrasting how the physical evidence and testimony of witnesses corroborated or contradicted the particular witness's testimony. In *People v. Kerber, supra*, 64 P.3d at 936, a division of this court held:

> Because the testimony of the ... witnesses was contradictory and in some respects irreconcilable, it was proper for the prosecutor to highlight for the jury inconsistencies in the statements of defense witnesses. Nor do we view it improper for the prosecutor also to argue that the testimony of the People's witnesses was irreconcilable with that of defendant and, therefore, that one side was not telling the truth. Neither of the dangers connected with a prosecutor's assertion of personal opinion identified in *Wilson v. People, supra*, is implicated here.

*See also United States v. Spain*, 536 F.2d 170, 174 (7th Cir.1976)(where conflicts in the evidence exist and cannot be the result of honest mistake, each counsel is "entitled to argue that witnesses called by him had spoken the truth and those called by the other side had testified falsely").

Consequently, we find no misconduct here.

### C. Misstating the Evidence

Defendant also argues that the prosecution's comments, that defendant had "con-

ceded" the issue of intent to distribute and that defendant was unemployed, were not based in the evidence and were therefore misstatements of the evidence. We disagree.

As clarified in rebuttal argument, the prosecution's comment that defendant had "conceded" intent to distribute was meant to point out that defendant had not attacked the testimony that eight grams was "generally" an amount that "probably [is] going to be sold." And defendant himself testified that he was not presently working and was "trying to find a job." Thus, the prosecution's comments were a fair comment on, and not a misstatement of, the evidence. *See People v. Roadcap, supra.*

### VI. Cumulative Error

Finally, we reject defendant's contention that he was denied his right to a fair trial because of cumulative error. We conclude that any errors, considered either individually or cumulatively, did not deprive defendant of a fair trial. *See People v. Jenkins,* 83 P.3d 1122, 1130 (Colo.App.2003).

The judgment is affirmed.

Judge ROY and Judge KAPELKE * concur.