The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Daryl J. SCHEFFER, Defendant–
Appellant.

No. 06CA0780.

Colorado Court of Appeals,
Div. VII.

April 2, 2009.

John W. Suthers, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Daryl J. Scheffer, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of more than one gram of a schedule II controlled substance (methamphetamine), possession of one gram or less of a schedule I controlled substance (heroin), tampering with physical evidence, possession of one ounce or less of marijuana, and possession of drug paraphernalia. We affirm.

## I. Background

After defendant purchased a "large amount" of iodine from a feed store, a store employee called the police because defendant was not a regular customer and the employee was suspicious because iodine can be used to manufacture methamphetamine. The store employee described the purchaser as a male with scraggly hair, wearing a dark blue or black coat, and carrying a backpack or bag. A police dispatcher relayed the report and description to Officer Roe, and dispatched him to contact the purchaser.

Officer Roe subsequently contacted defendant, who was walking along a street near the feed store carrying a bag. The officer asked defendant a number of questions, and in the course of the encounter searched defendant and his bag. The searches revealed a number of items, including drugs and drug paraphernalia.

The People charged defendant with—and a jury convicted him of—the five counts noted above. The court sentenced defendant to six years in the custody of the Department of Corrections on the possession of methamphetamine conviction, and to lesser concurrent terms on the other two felony convictions (possession of heroin and tampering with physical evidence).

## II. Discussion

### A. Motion to Suppress

Prior to trial, defendant moved to suppress all evidence that Officer Roe obtained from his bag and person and all of his statements, claiming: (1) the stop was an invalid investigatory stop because Officer Roe lacked reasonable suspicion to believe that he had committed an offense; (2) the arrest was invalid because the officers lacked probable cause to arrest him; (3) the searches of his bag and person were illegal because he did not consent to the searches; and (4) his statements were improperly obtained because he did not receive a prior advisement under *Miranda v.*

*Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Following an evidentiary hearing, the district court denied the motions, finding and concluding that: (1) the encounter was consensual until the moment the officers formally arrested defendant, and therefore the absence of reasonable suspicion did not require suppression of the evidence; (2) the officers had probable cause to arrest defendant for possession of drug paraphernalia at the point Officer Roe found a pop can bottom with burnt residue, syringes, and a digital scale in defendant's bag; (3) defendant voluntarily consented to the searches of his bag and person; and (4) defendant's statements were not the product of custodial interrogation, and therefore could be used by the prosecution as evidence notwithstanding the absence of a prior *Miranda* advisement.

On appeal, defendant does not challenge directly the court's conclusion that the officers had probable cause to arrest him. He does, however, challenge the court's other conclusions. We reject each challenge in turn.

### 1. Standard of Review

In reviewing a district court's ruling on a motion to suppress evidence, we defer to the district court's findings of historical fact but review its legal conclusions de novo. *People v. King,* 16 P.3d 807, 812 (Colo. 2001); *People v. Flowers,* 128 P.3d 285, 287 (Colo.App.2005). We must " 'ascertain whether the trial court's legal conclusion[s][are] supported by sufficient evidence and whether the trial court applied the correct legal standard.' " *King,* 16 P.3d at 812 (quoting *People v. Owens,* 969 P.2d 704, 707 (Colo.1999)); *see also People v. Brandon,* 140 P.3d 15, 18 (Colo.App.2005).

### 2. Facts

Officer Roe was the sole witness at the suppression hearing. The district court apparently found Officer Roe's testimony credible. Defendant's counsel did not challenge that testimony: the resolution of defendant's motions turned on the legal effect of what were essentially undisputed facts. Those facts, as testified to by Officer Roe, were as follows.

While driving near the feed store, Officer Roe saw defendant walking on the sidewalk. He parked his car, got out, approached defendant, and asked defendant if he could speak to him. Officer Roe, who was in uniform, asked defendant to set down his bag. Defendant complied. Officer Roe then asked defendant if he had come from the feed store and purchased iodine. Defendant responded affirmatively to both questions. By this time, Officer Fell had arrived to provide backup, and he stood about six feet behind Officer Roe.

Defendant said that he bought the iodine because he worked with horses and his boss asked him to buy it. Officer Roe then asked defendant for consent to search his bag for drugs, and defendant verbally agreed. Because defendant kept putting his hands in his pockets, Officer Roe became uncomfortable. Officer Roe asked defendant if he had any weapons. Defendant responded that he had a knife. Officer Roe then asked defendant for permission to pat him down for weapons. Defendant consented. During the pat-down search, Officer Roe found a knife, a pill bottle (which had defendant's name on it), and small canisters in defendant's pockets. Officer Roe set the unopened pill bottle on the ground. Defendant handed the canisters to Officer Roe, and he set them down next to the pill bottle.

Officer Roe then searched defendant's bag. Therein, he found part of a soda can with burnt residue on it; two syringes, both of which contained brown liquid (which Officer Roe believed to be heroin); iodine; lighter fluid; horse mane and tail moisturizer; rolling papers; and a digital scale. Defendant told Officer Roe that he was diabetic, and that he used the syringes to inject insulin. Officer Roe, who had seen insulin before, did not think the liquid in the syringes looked like insulin. Out of concern for his safety, Officer Roe asked defendant to remove the syringes from the bag. Defendant removed one, but then dropped it back in the bag. The officer asked to see defendant's arms, defendant voluntarily showed his arms, and the officer observed "fresh track marks," which,

based on his experience with his stepfather (a diabetic), he thought to be inconsistent with insulin use.

Officer Roe then asked defendant for permission to search his person for drugs. Defendant gave him permission. Officer Roe found razor blades and a bindle containing an unknown substance. At that point, the officers arrested defendant and seized his bag.

### 3. Consensual Encounter

Defendant contends that the district court erred in not suppressing all evidence obtained as a result of Officer Roe's searches of his bag and person because the encounter was not consensual and Officer Roe seized him without reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution. We disagree.

■ There are three categories of encounters between police and citizens: (1) arrests; (2) investigatory stops; and (3) consensual interviews. *People v. Paynter*, 955 P.2d 68, 72 (Colo.1998). Because arrests and investigatory stops are seizures, they implicate the search and seizure protections of the Fourth Amendment and article II, section 7. *People v. Morales*, 935 P.2d 936, 939 (Colo.1997); *People v. Valencia*, 169 P.3d 212, 217 (Colo. App.2007). "In contrast, a consensual encounter—a contact in which the voluntary cooperation of a citizen is elicited by police through noncoercive questioning—is not a seizure, and thus, does not implicate constitutional search and seizure protections." *Valencia*, 169 P.3d at 217 (citing *People v. Jackson*, 39 P.3d 1174, 1179 (Colo.2002), *abrogated in part on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); and *People v. Cervantes–Arredondo*, 17 P.3d 141, 146 (Colo.2001)).

■ A police officer may stop an individual and ask him questions without the encounter necessarily constituting a seizure. *See Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (a seizure does not occur "when police ask questions of an individual, ask to examine the individual's identification, and request consent to search

his or her luggage—so long as the officers do not convey a message that compliance with their requests is required"); *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo.1989) (defining "consensual encounter" as "that in which no restraint of the liberty of the citizen is implicated, but the voluntary cooperation of the citizen is elicited through non-coercive questioning"). Moreover, a police officer may ask an individual questions about criminal conduct without transforming a consensual interview into an investigatory stop. *See People v. Johnson*, 865 P.2d 836, 843 (Colo. 1994) (encounter was consensual where officers approached the defendant and, after asking for his airline ticket and driver's license, asked him if he was carrying any narcotics or large sums of money); *People v. Thomas*, 839 P.2d 1174, 1178 (Colo.1992) (encounter between an officer and the defendant was consensual even after the officer began to ask questions about criminal behavior). However, "[a] consensual interview can escalate into an investigatory stop and thus implicate Fourth Amendment protections if, upon objective review of the totality of the circumstances, a reasonable person would feel that he or she was not free to leave or disregard an officer's request for information." *People v. Coleman*, 55 P.3d 817, 820 (Colo.App.2002); *accord Outlaw v. People*, 17 P.3d 150, 155 (Colo.2001).

The Colorado Supreme Court has identified a number of nonexclusive factors as relevant in determining whether an encounter was consensual. *See People v. Marujo*, 192 P.3d 1003, 1007 (Colo.2008); *Jackson*, 39 P.3d at 1184. We examine each of those factors in light of the record. The testimony at the suppression hearing, which, again, was essentially undisputed, established the following facts relevant to those factors:

#### Display of authority or control

■ There is no indication in the record that either officer displayed authority or control over defendant. Officer Roe did not activate a siren or overhead lights. Officer Roe parked his marked police car before approaching defendant on foot.

■ Defendant argues that Officer Roe's instruction that he keep his hands out of his

pockets was a show of authority that he could not disregard. However, an officer may provide instructions to a person necessarily required for a safe encounter without converting the encounter into an investigatory stop. *See People v. Fines*, 127 P.3d 79, 81 (Colo. 2006); *cf. Marujo*, 192 P.3d at 1006 ("requesting that a person move a short distance does not constitute a seizure").

### Number of officers present

Two officers were present. Only one, Officer Roe, questioned or searched defendant.

### Nature of approach

There is no indication in the record that either of the two officers approached defendant in a threatening manner.

### Display of weapon

There is no indication in the record that either of the two officers removed his gun from his holster or otherwise displayed a weapon.

### Nature of questioning

Officer Roe requested information; he did not demand it.

### Officer's tone of voice

There is no indication in the record that Officer Roe spoke to defendant in a threatening, rather than merely conversational tone.

### Physical contact

■ Officer Roe's only physical contact of defendant was in the context of a consensual pat-down search. When a person consents to a pat-down search, that fact alone does not transform the encounter into an investigatory stop. *See Marujo*, 192 P.3d at 1008 (cocaine seized as a result of a pat-down search of the defendant was admissible where officer asked the defendant to step forward and asked the defendant for consent to a pat-down search, and the defendant consented; encounter was consensual); *Thomas*, 839 P.2d at 1177–78 (drug paraphernalia seized as a result of a pat-down search of the defendant was admissible because the defendant consented; initial encounter was consensual);

*People v. Mack*, 33 P.3d 1211, 1216 (Colo. App.2001) (extent of consent not exceeded where officer asked whether he could retrieve the defendant's identification and search his pockets, defendant said, "Go ahead," and officer reached into the defendant's pocket and found crack cocaine).

### Ability to terminate the encounter

Defendant asserts that he was not free to leave because two officers were present. But there is no indication in the record that either officer blocked defendant's path or impeded his ability to terminate the encounter. Additionally, the mere presence of two officers does not show that defendant's movements were impeded. *See People v. Tweedy*, 126 P.3d 303, 306 (Colo.App.2005) (presence of three officers at 5:10 a.m. outside the defendant's hotel room was not coercive where police sought permission to enter and search room in a conversational voice). Moreover, there is nothing in the record that suggests that Officer Fell coerced or threatened defendant; rather, he simply stood behind Officer Roe. *See People v. Wiley*, 51 P.3d 361, 363 (Colo.App.2001) (the defendant's consent to search of her purse was valid even though three other officers were present, where they did not participate in the discussion, and the room in which they and the defendant were appeared to be large enough so that the officers' presence was not intimidating).

We are not persuaded that Officer Roe's request that defendant put down his bag rendered the encounter nonconsensual. Officer Roe requested, but did not demand, that defendant put down his bag. Officer Roe did not move the bag away from defendant or retain it until the arrest. *See Marujo*, 192 P.3d at 1008 (the defendant was not separated from his identification or belongings); *see also United States v. Evans*, 937 F.2d 1534, 1537 (10th Cir.1991) (merely approaching an individual in a public place and asking questions of the individual, including asking to examine the person's identification or requesting the person's consent to search his or her luggage is not a seizure as long as the police have not, by means of physical force or show of authority, restrained the person's

liberty); *cf. Fines,* 127 P.3d at 81 (consent was invalid where the defendant was seized by police who remained in control of her purse, without offer of return).

### Duration of the encounter

The entire encounter lasted approximately fifteen minutes. It is unclear from the record exactly how early in the encounter defendant gave consent to the search of his bag and the search of his person; however, it appears that defendant provided consent early in the encounter. Even if defendant gave consent to the search of his person late in the encounter, that did not transform the encounter into an investigatory stop. *See Morales,* 935 P.2d at 939–40 (forty-minute encounter consensual because officers did not display force or do anything to restrain the defendant's liberty; officers' tone was conversational throughout, officers merely requested to see the defendant's ticket and identification, officers did not manufacture delays or detain the defendant, and officers were offering legitimate assistance to the defendant); *Valencia,* 169 P.3d at 217–18 (questioning of the defendant, a passenger in vehicle she owned which was pulled over in a traffic stop, occurred during a consensual encounter where officer asked for, but did not demand, information from the defendant, officer did not touch the defendant, and fifteen minutes elapsed between traffic stop and consent).

### Retention of identifying information

The record indicates that the officers confirmed defendant's identity when defendant showed them a Montana driver's license; but there is no indication that either officer retained defendant's license. *Cf. Jackson,* 39 P.3d at 1188 (consensual encounter escalated to an investigatory stop when police officer told the defendant to remain in the car while officer returned to patrol car with the defendant's identification). There is no indication that the officers ran a warrant search for defendant prior to his arrest.

Based on the totality of the circumstances, we conclude that defendant consented to the encounter with Officer Roe and Officer Fell.

Thus, defendant was not seized until the officers arrested him.

### 4. Voluntariness

Defendant's argument that his consents to the searches of his bag and person were involuntary is premised on his contention that Officer Roe's questioning was "tainted" by the alleged illegal detention. Because we have rejected that premise, defendant's voluntariness argument necessarily fails.

In any event, we conclude, based on our review of the record, and consideration of the totality of the circumstances, *see People v. Drake,* 785 P.2d 1257, 1265 (Colo.1990), that the district court's finding that defendant's consents were voluntary is not clearly erroneous, *id.* at 1266 ("Voluntariness is a question of fact to be decided by the trial court and upheld on appeal unless clearly erroneous."). The evidence in the record does not demonstrate that defendant's consents were "the result of duress, coercion, or any other form of undue influence." *People v. Lehmkuhl,* 117 P.3d 98, 102 (Colo.App.2004) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *see People v. Humphrey,* 132 P.3d 352, 360 (Colo. 2006) ("Where coercive government conduct plays a significant role in inducing the inculpatory statement or statements, the statement is deemed involuntary.").

As discussed, the undisputed testimony showed the officers did not detain defendant; Officer Roe questioned defendant calmly; and the officers did not display or use any force. There is no evidence that the officers threatened defendant in any way, or that Officer Roe (the only officer who spoke with defendant) made any promises to induce defendant's consent. The officers' conduct could not reasonably have appeared to be coercive to a person in defendant's circumstances. *See People v. Magallanes–Aragon,* 948 P.2d 528, 531 (Colo.1997).

### 5. Custody

Defendant also contends he was in custody when Officer Roe questioned him, and that because Officer Roe did not advise him of his *Miranda* rights before he made certain statements, the district court erred in

not suppressing those statements. We disagree.

 If a person is subjected to a custodial interrogation, the prosecution may not use his statements to police, even if voluntary, during its case-in-chief unless the defendant was first advised of his *Miranda* rights. *People v. Redgebol*, 184 P.3d 86, 93 (Colo.2008). A person is in "custody" if he is "deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; *accord People v. Pascual*, 111 P.3d 471, 476 (Colo.2005). The question is whether "a reasonable person in the defendant's position would consider himself to be deprived of his freedom of action to the degree associated with a formal arrest." *People v. Matheny*, 46 P.3d 453, 468 (Colo. 2002). This inquiry requires consideration of the totality of the circumstances. *Pascual*, 111 P.3d at 476.

Many of the facts that have led us to conclude that defendant's encounter with Officer Roe and Officer Fell was consensual also lead us to conclude that defendant was not in custody at any point prior to his arrest. Officer Roe questioned defendant at 12:45 p.m. on a public sidewalk. Officer Fell provided backup. *See Berkemer v. McCarty*, 468 U.S. 420, 438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (confrontation by only one or two officers in traffic stop minimized detainee's sense of vulnerability). The officers did not impede defendant's progress or prohibit him from going on his way. Neither officer drew his weapon. Officer Roe's tone of voice was calm and professional, and while he requested that defendant remove his hands from his pockets and set down his bag, these requests did not constrain defendant and were related to the officers' safety. *Cf. People v. Reddersen*, 992 P.2d 1176, 1181 (Colo.2000) (driver was not in custody when officer asked him whether he had any illegal substances and whether he consented to a search; questions were asked during a routine traffic stop and officer did not act in a threatening or coercive way or confine the driver); *People v. Archuleta*, 719 P.2d 1091, 1091–93 (Colo. 1986) (driver was not in custody when officer asked him where he was going and where he had been; officer stopped vehicle because he observed it weaving, and asked driver to get out of the car).

**B. Instruction on Mens Rea Requirement**

Defendant contends that the district court erroneously instructed the jurors on the methamphetamine possession charge by telling them that "[t]he prosecution need not prove that the defendant knew that he possessed a certain quantity of controlled substances." He argues that the mens rea of "knowingly" applies to every element of the crime charged, including the amount of methamphetamine, and that instructing the jurors to that effect was crucial here because the methamphetamine was found in two containers (a pill bottle containing .44 grams and another pill bottle containing .91 grams), and only by adding the weights of each together did the total weight exceed one gram. We are not persuaded.

 Because defendant objected to the instruction, we must reverse his conviction if the instruction was erroneous and the error affected his substantial rights. *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001); *People v. Gordon*, 160 P.3d 284, 288 (Colo.App.2007); *see* Crim. P. 52(a). We will disregard such an error, however, " 'if there is not a reasonable probability that the error contributed to the defendant's conviction.' " *Garcia*, 28 P.3d at 344 (quoting *Salcedo v. People*, 999 P.2d 833, 841 (Colo.2000)).

 The error defendant alleges here is one of statutory construction. Therefore, in determining whether the district court erroneously instructed the jury, we review the district court's decision de novo. *People v. Rice*, 198 P.3d 1241, 1244 (Colo.App.2008).

Section 18–18–405(1)(a), C.R.S.2008, states, as relevant here, that "it is unlawful for any person knowingly to ... possess ... a controlled substance...." The statute further provides:

(2)(a) Except as is otherwise provided in subsection (2.3) of this section for possession offenses ... involving one gram or less of any quantity of a schedule I through IV controlled substance ..., any person who violates any of the provisions of subsection (1) of this section:

(I) In the case of a controlled substance listed in schedule I or II of part 2 of this article, commits:

(A) A class 3 felony; except that a person commits a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule II....

(2.3) (a) Any person who commits the offense of possession in violation of the provisions of subsection (1) of this section by possessing any material, compound, mixture, or preparation, weighing one gram or less that contains any quantity of a controlled substance listed in schedules I through IV of part 2 of this article commits:

(I) A class 6 felony....

 In interpreting the statute, we must give effect to the General Assembly's purpose and intent in enacting it. *Whitaker v. People,* 48 P.3d 555, 558 (Colo.2002). " 'If the plain language of the statute clearly expresses the legislative intent, then the court must give effect to the ordinary meaning of the statutory language.' " *Id.* (quoting *Pediatric Neurosurgery, P.C. v. Russell,* 44 P.3d 1063, 1068 (Colo.2002)). "We must read the statute as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible." *Id.*

Section 18–18–405 creates two felony levels of offenses for possession of a schedule II controlled substance: a class 4 felony if the offense "involve[s]" more than one gram; and a class 6 felony if the offense "involve[s]" one gram or less. However, the subsections that create this distinction, § 18–18–405(2)(a)(1)(A), (2.3)(a), do not expressly include any mens rea requirement with respect to the amount. A mens rea requirement, "knowingly," is included only in subsection (1)(a) in relation to manufacturing, dispensing, selling, distributing, possessing, or possessing with intent to manufacture, dispense, sell, or distribute a controlled substance.

 Nonetheless, defendant argues that because the amount possessed establishes the felony level of the offense, the amount is an element of the offense, and because subsection 18–1–503(4), C.R.S.2008, dictates that the mental state specified in a statute applies to every element of an offense, the mental state of "knowingly" applies to the amount. We reject this reasoning.

 Statutory provisions that increase the felony level of an offense are generally regarded and treated as sentence enhancement provisions, not essential elements of an offense. *See Vega v. People,* 893 P.2d 107, 113 (Colo.1995); *Armintrout v. People,* 864 P.2d 576, 580 (Colo.1993); *People v. Santana–Medrano,* 165 P.3d 804, 807 (Colo.App.2006) (provision that raised sexual assault from a class 4 felony to a class 3 felony when the defendant "causes submission of the victim through the actual application of physical force or physical violence" was not an element of the offense). "[A] sentence enhancement provision is not an element of the offense charged. A defendant still may be convicted of the underlying offense without any proof of the sentence enhancer, and this would not be possible if we were dealing with an essential element of the offense." *Armintrout,* 864 P.2d at 580.

This rationale applies in this case as well. The offense is established by subsection (1)(a): the possession of *any* amount of a schedule II controlled substance is a felony offense so long as the possessor possesses the substance "knowingly." *See Whitaker,* 48 P.3d at 559; *Richardson v. People,* 25 P.3d 54, 58 (Colo.2001).

In *Whitaker,* the supreme court examined a prior version of the Uniform Controlled Substances Act (the Act), section 18–18–405, C.R.S.2001, ch. 71, sec. 1, 1992 Colo. Sess. Laws 356, to determine whether the General Assembly intended the sentencing provisions thereof to require proof of a mens rea. 48 P.3d at 558. The defendant had been convicted of possessing 1000 grams or more of a schedule II controlled substance. *Id.* The court noted that former subsection 18–18–405(1) set forth the elements of a controlled substance offense, and that other subsections separately set forth the applicable punishments for drug offenses based on drug type or quantity. *Id.* The court concluded:

This statutory structure demonstrates the General Assembly's intent to separate sentencing factors, such as drug type and

quantity, from the elements of the crime.... [D]rug quantity [is not prescribed] as an element of the offense, nor does [the statute] require proof of a culpable mental state in regard[ ] to it.

*Id.* at 558–59.

Prior to 2003, the felony level for possession of a controlled substance was determined under the Act by the schedule of the controlled substance possessed, not the quantity possessed. § 18–18–405(2), C.R.S.2002 (repealed), ch. 71, sec. 1, 1992 Colo. Sess. Laws 356. Possession of any amount of a schedule II controlled substance was a class 4 felony. § 18–18–405(2)(a)(I) (repealed).

In 2003, the General Assembly amended the Act to provide, as it does now, that possession of more than one gram of a schedule II controlled substance is a class 4 felony, while possession of one gram or less of a schedule II controlled substance is a class 6 felony. § 18–18–405(2)(a)(I)(A), (2.3)(a)(I); *see* ch. 424, sec. 3, 2003 Colo. Sess. Laws 2682–85. Contrary to defendant's contention, we are not persuaded that this change renders the *Whitaker* court's reasoning inapplicable in this case.

Under the plain language of the statute, unlawful possession of a schedule II controlled substance is proved when the prosecution shows beyond a reasonable doubt that the defendant knowingly possessed a schedule II controlled substance. § 18–18–405(1)(a). "Knowingly" appears only in subsection 18–18–405(1)(a), and modifies the verb "possess" (among other actions). The prior version of subsection 18–18–405(1)(a), as interpreted in *Whitaker*, and the current version of the statute are identical in this respect.

Further, as with the prior version of the statute, the penalty provisions of the Act are set forth in subsections separate from that defining the offense. This demonstrates that the General Assembly did not intend that the mens rea of knowingly, found in subsection 18–18–405(1)(a), would apply to the quantity requirements. *See, e.g., Whitaker,* 48 P.3d at 559. Under the current statute, the applicable range of punishment is determined by differing felony levels, which are based on amount, while formerly the range was deter-

mined by amount alone. This use of felony levels does not transform the amount into an element of the offense. *Cf. Copeland v. People,* 2 P.3d 1283, 1287 (Colo.2000) (mens rea of knowingly or recklessly in arson statute applied only to actor's conduct in starting or maintaining the fire and not to endangerment provision that determined whether the offense was a felony or a misdemeanor); *Santana–Medrano,* 165 P.3d at 806–07 (applying *Whitaker's* reasoning to a statute that raised the felony level of sexual assault based on whether the defendant actually applied physical force or violence).

In *People v. Perea,* 126 P.3d 241 (Colo. App.2005), a division of this court addressed a mens rea issue involving the same statute at issue here. The division determined that subsection 18–18–405(1)(a) requires only knowing possession of a controlled substance, not knowing possession of the precise type of controlled substance possessed by the defendant. *Id.* at 245. In reaching this conclusion, the division reasoned in part as follows:

> The requirement that a defendant "knowingly" distribute or possess a controlled substance adequately protects those individuals who may innocently become involved in a drug transaction by inadvertence or accident. However, one who knowingly engages in the trade of controlled substances should not profit by feigning ignorance, and subsequently relying on the State's potential inability to prove knowledge of the exact substance involved.

*Id.* (quoting *State v. Sartin,* 200 Wis.2d 47, 546 N.W.2d 449, 456 (1996)). This reasoning applies with equal force to the amount of the controlled substance in question.

Therefore, we conclude that the amount of methamphetamine was not an essential element of the offense with which defendant was charged. It follows that because the requirement that the defendant act "knowingly" is expressed only in relation to the conduct proscribed in subsection (1)(a), and no mens rea is set forth in subsections (2)(a)(1)(A) and (2.3)(a), that requirement does not apply to the amount of the controlled substance. Accordingly, the district

court did not err in instructing the jury that the prosecution was not required to prove defendant knew he possessed more than one gram of methamphetamine.

Alternatively, we also hold that even if the amount is an essential element of the offense, the district court did not err in giving the instruction.

Subsection 18–1–503(4) provides: "When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense *unless an intent to limit its application clearly appears.*" (Emphasis added.) "[W]e must carefully consider whether the legislature intended that the express or necessarily-implied culpable mental state of the offense applies only to certain elements." *People v. Cross,* 127 P.3d 71, 74 (Colo.2006).

In *Whitaker,* as noted, the court relied on the structure of the former version of section 18–18–405 in concluding that the mens rea of knowingly did not apply to the amount of the controlled substance. Specifically, the court held that the "statutory structure demonstrates the General Assembly's intent to separate sentencing factors, such as drug type and quantity, from the elements of the crime." *Whitaker,* 48 P.3d at 558.

Though the General Assembly amended the statute after *Whitaker* was decided, its structure has remained essentially unchanged. The mens rea of "knowingly" remains expressed only in subsection (1)(a), and possession of any amount of a controlled substance remains unlawful. The penalty provisions still are contained in subsections separate from subsection (1)(a). Thus, we conclude that the General Assembly has shown an intent to limit the application of the mens rea requirement to possession and the nature of the substance as a controlled substance. *Cf. Copeland,* 2 P.3d at 1286–87 (structure of arson statute showed General Assembly's intent to limit mens rea of knowingly or recklessly to starting or maintaining a fire; applying the exception in subsection 18–1–503(4) ).

Finally, we reject defendant's contention that by instructing the jurors that the prose-

cution was not required to prove he knew he possessed more than one gram of methamphetamine, the effect of the jury instructions was to permit the jurors to convict him of the class 4 felony so long as they found that he possessed *either* the .44 gram quantity *or* the .91 gram quantity of methamphetamine. The record does not disclose that defendant raised this precise argument in the district court. Nevertheless, we will assume for purposes of discussion that he preserved it.

■ We must read jury instructions and verdict forms together to determine if they adequately informed the jury of the law. If so, there is no reversible error. *See, e.g., People v. Campbell,* 678 P.2d 1035, 1042 (Colo.App.1983); *see also United States v. Poirier,* 321 F.3d 1024, 1032 (11th Cir.2003).

■ The jury instructions and verdict form required the jurors to find, beyond a reasonable doubt, that defendant knowingly possessed both the .44 gram amount and the .91 gram amount of methamphetamine to convict him of the charged offense. Instruction 2 informed the jury that defendant was charged with possessing more than one gram of methamphetamine. Instruction 15 stated that the prosecution was required to prove that defendant knowingly possessed a material, compound, mixture, or preparation that contained methamphetamine. On the verdict form for the charge, the jury foreman checked the box indicating that the jurors had found, "beyond a reasonable doubt, that the defendant possessed more than 1 gram of methamphetamine...." Had the prosecution failed to prove "knowing" possession of one of the drug amounts, the jurors would not have included it in the total weight, and therefore they would not have found that defendant possessed more than one gram.

■ In any event, even if the instructions somehow created the abstract possibility of the result argued by defendant, there is no reasonable possibility of such a result in this case. *See* Crim. P. 52(a) (an error that does not affect the defendant's substantial rights shall be disregarded); *People v. Rodriguez,* 914 P.2d 230, 273–75 (Colo.1996) (same); *People v. Washington,* 179 P.3d 153, 167 (Colo.App.2007) (same), *aff'd,* 186 P.3d 594

(Colo.2008). We reach this conclusion for three reasons.

First, assuming, as defendant contended at trial, that the pill bottles were found in the bag, the evidence of defendant's knowing possession of the bag and the items therein was overwhelming. Defendant was carrying the bag and walking alone when he was questioned by Officer Roe. Defendant told Officer Roe he had purchased iodine at the feed store, and the iodine and other items purchased from the feed store, along with a receipt therefor, were found in the bag. Officer Roe also found syringes in the bag, which defendant admitted were his, and observed "fresh track marks" on defendant's arm. The bottles had defendant's name on them.

Second, the evidence was overwhelming that defendant knowingly possessed the bottles in which the methamphetamine was contained, regardless whether the bottles were found in the bag or on defendant's person. As discussed, he knowingly possessed the bag and its contents, and he does not contend that he did not knowingly possess anything found on his person. And, as noted, both bottles had defendant's name on them.

Third, the prosecution argued, based on Officer Roe's testimony, that both bottles were found on defendant's person, while defendant's counsel argued, based on Officer Fell's testimony, that both bottles were found in the bag. No one argued that one bottle was found on defendant's person and the other was found in the bag. It is illogical to suggest that the jurors reasonably could have found that defendant knowingly possessed one but not both bottles found in the same place.

### C. Prosecutor's Closing Argument

Defendant contends that the prosecutor's misconduct in closing argument violated his fundamental constitutional rights to a fair trial and a fair and impartial jury under both the United States and Colorado Constitutions. He argues that the prosecutor's repeated arguments that an element of a charged offense was "undisputed" or "not in dispute," or that there was no evidence contrary to what the prosecution had presented

misled the jury about the prosecution's burden of proof and constituted improper comment on his exercise of his right to remain silent. We disagree.

Defendant did not object, as he now does on appeal, to any of the prosecutor's statements. We therefore review his contention for plain error. *Domingo–Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005); *People v. Sommers*, 200 P.3d 1089, 1092 (Colo.App. 2008).

 Prosecutorial misconduct amounts to plain error only when there is a " 'substantial likelihood that it affected the verdict or deprived a defendant of a fair and impartial trial.' " *Harris v. People*, 888 P.2d 259, 267 (Colo.1995) (quoting *People v. Constant*, 645 P.2d 843, 847 (Colo.1982)). Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Manier*, 197 P.3d 254, 258 (Colo.App.2008).

 During closing argument, "a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence." *People v. Walters*, 148 P.3d 331, 334 (Colo.App.2006). By stating that the evidence against defendant was "undisputed" or "not in dispute," the prosecutor here was commenting on the strength and significance of the evidence that had been marshaled against defendant. *Cf. People v. Rivas*, 77 P.3d 882, 892 (Colo.App.2003) (no plain error in prosecutor's closing statement, "cause I believe the evidence has been proven beyond a reasonable doubt," because it was a comment on the evidence); *People v. Esquivel–Alaniz*, 985 P.2d 22, 23–24 (Colo.App.1999) (prosecutor did not shift burden of proof by remarking that the "defendant has the same subpoena power as the People do"; remark was a permissible comment on the lack of evidence supporting the defendant's theory of the case). We do not perceive that any of these statements somehow sought to shift the burden of proof. Nor do we perceive that the prosecutor improperly commented on defendant's right to remain silent. *See People v. Gomez*, 211 P.3d 53, 59 (Colo.App. 2008) (prosecutor's statements in closing ar-

gument that evidence was "uncontradicted" were not impermissible shifting of burden of proof or comment on the defendant's exercise of his right to remain silent); *People v. Gibson*, 203 P.3d 571, 577 (Colo.App.2008) (prosecutor's statement in closing argument that there was no evidence supporting aspect of the defendant's theory of defense was not an impermissible comment on the defendant's exercise of his right to remain silent).

Accordingly, we hold that none of the prosecutor's statements was improper.

The judgment is affirmed.

Judge GABRIEL and Judge MÁRQUEZ * concur.