**Dr. Glenn B. McCANDLESS, Plaintiff-Appellant,**

v.

**EQUITABLE LIFE INSURANCE COMPANY OF IOWA, Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 5, 1986.

Application for Permission to Appeal Denied by Supreme Court Dec. 1, 1986.

Wayne S. Taylor, Brentwood, for plaintiff-appellant.

John W. Wagster, Nashville, for defendant-appellee.

OPINION

CANTRELL, Judge.

This is an action for accidental death benefits. The insurance company denied payment because of its contention that the insured was engaged in the commission of a felony when he was killed. The chancellor held in favor of the insurance company.

Two insurance policies are the subject of this dispute. Each policy named the decedent, John McCandless, as the insured and provided that in the event of death by accident, the insurance company would pay an additional $10,000 to the beneficiary. Each policy also excluded the accidental death benefits if death resulted from "participating in a riot or committing an assault or a felony ..."

On April 7, 1984, the insured, John McCandless, and a friend, Herman T. Floyd, were riding around in John McCandless' car. They decided to go to the South Eighth Street area in East Nashville so that Mr. Floyd could purchase a dilaudid pill. (Dilaudid is a Schedule II drug under T.C.A. § 39-6-417.) Mr. McCandless drove and Mr. Floyd rode on the passenger side of the front seat.

When they arrived at the area of South Eighth Street, they drove up to a person on the street and Mr. Floyd inquired whether that person had any dilaudid. The stranger, who was later identified as Robert Shinault, told them to drive around the block and return, which they did. Mr. McCandless then pulled up beside Shinault, who stood by the window on the driver's side of the car. Mr. Shinault bent down to get

something out of his sock. Mr. Floyd and Mr. McCandless asked what he was doing and he replied that he was reaching for a pill. Mr. Floyd was counting out some money. For some reason, Mr. McCandless reached toward the floor of the car. When he did that, Mr. Shinault pulled a pistol and shot him in the left side of the head. Mr. McCandless died from the wound. Mr. Shinault was sentenced to 25 years in prison for murder.

The question for decision in this case is whether John McCandless, on April 17, 1984, was committing a felony which resulted in his death. The answer to that question will determine the rights and liabilities of the parties.

In 1971, the Tennessee Legislature dealt comprehensively with the possession and distribution of controlled substances. The Tennessee Drug Control Act of 1971 provides an elaborate set of schedules for controlled substances, makes it a crime to violate the act, and provides penalties for such violations. T.C.A. § 39–6–417 fixes the criminal liability for violations of the Act. The following parts of that section are pertinent here:

"(a) Except as authorized by §§ 39–6–401—39–6–419 and title 53, chapter 11, parts 3 and 4, it is unlawful for any person to manufacture, deliver, sell, or possess with intent to manufacture, deliver or sell, a controlled substance, or for two (2) or more persons to conspire to manufacture, deliver, sell, or possess with intent to manufacture, deliver or sell, a controlled substance, provided, however, that no agreement shall be deemed a conspiracy unless some act be done to effect the object thereof.

(1) Any person who violates this subsection with respect to: ...

\* \* \* \* \* \*

(B) A controlled substance classified in schedule II is guilty of a felony and upon conviction shall be imprisoned for not less than four (4) years nor more than ten (10) years, and in addition thereto may be fined not more than fifteen thousand dollars ($15,000);

\* \* \* \* \* \*

(2) It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals or a small amount of controlled substances that the controlled substances so exchanged were possessed not with the purpose of selling or otherwise dispensing them in violation of the provisions of subsection (a) of this section ...

(b) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by §§ 39–6–401—39–6–419 and title 53, chapter 11, parts 3 and 4.

(1) Any person who violates this subsection shall be guilty of a misdemeanor and, upon first conviction, be sentenced to confinement in a county jail or workhouse for a period not to exceed eleven (11) months, twenty-nine (29) days and/or fined an amount not to exceed one thousand dollars ($1,000) or may have the sentence pending upon him for this violation suspended and may as a condition of the suspension be required to participate in a program of rehabilitation at a drug treatment facility operated by the state or a comprehensive community mental health center."

As these sections of the Drug Control Act reveal, the legislature has drawn a sharp distinction between simple possession of controlled substances and selling, delivering, or possessing with the intent to

sell or deliver them. Subsection (a) makes it a felony to manufacture, deliver, sell, or possess with intent to manufacture, deliver, or sell a controlled substance. The severity of the prison term attached to a violation of this subsection varies with the type of substance involved. Subsection (b) makes it a misdemeanor to possess controlled substances, and upon the first conviction the penalty provided is up to eleven (11) months and twenty-nine (29) days in a county jail or workhouse.

The insurance company in this case takes the position that a purchaser is nevertheless guilty of a violation of subsection (a) because he is a part of the delivery of a controlled substance. Delivery is defined in T.C.A. § 39-6-402(f) as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

■ We cannot agree with that contention. If the insurance company is right, the distinction between selling and simple possession would be destroyed and possessors could always be prosecuted under subsection (a) of the Act. In acquiring a controlled substance, a possessor would be guilty of taking part in the delivery. We think that interpretation of the Drug Control Act would undermine the distinction drawn by the legislature between selling and simple possession.

■ It is true that a purchaser of a controlled substance may be guilty of violating subsection (a) of the Act if the purchase was made for the purpose of resale or if the purchaser was a part of the chain of distribution. See U.S. v. Barnes, 604 F.2d 121 (2d Cir.1979). In that case the purchaser would be guilty of possession with intent to resell or of conspiring with the seller to deliver or sell—each a separate violation of subsection (a).

■ However, a person who merely attempts to purchase a drug for his own use from a member of the conspiracy to sell that drug cannot be convicted, by that act alone, of a conspiracy to distribute the drug. U.S. v. Martin, 599 F.2d 880 (9th Cir.1979). Proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy to distribute or possess with the intent to distribute a controlled substance. U.S. v. Watson, 594 F.2d 1330 (10th Cir.1979).

In this case, nothing in the stipulated facts indicates that Mr. Floyd intended to resell the one pill he was attempting to buy, or that he was otherwise involved in a chain of distribution. The facts compel the opposite inference, that Mr. Floyd was purchasing the pill for his own use.

■ The chancellor held that Mr. McCandless was guilty of a conspiracy to commit a felony. A conspiracy is defined as a combination between two or more persons to do a criminal or an unlawful act, or a lawful act by criminal or unlawful means. State v. W.M. Smith, 197 Tenn. 350, 273 S.W.2d 143 (1954). We agree that Mr. McCandless and Mr. Floyd were engaged in a conspiracy to commit a crime, but the crime was not a felony. Their intent was to purchase one dilaudid pill. Since under our view of T.C.A. § 39-6-417, one purchasing for his own use is not in a conspiracy to distribute a controlled substance with the seller, Mr. Floyd would be subject to punishment for simple possession, a misdemeanor under subsection (b) of the Drug Control Act. A conspiracy to commit a misdemeanor would be at most a misdemeanor. T.C.A. § 39-1-603; Owens v. State, 178 Tenn. 32, 154 S.W.2d 529 (1941).

The chancellor further held that Mr. McCandless was aiding and abetting Mr. Floyd in his purchase of the illegal drug. For the purpose of argument, we might agree. But again, assuming that the sale had been consummated, Mr. Floyd's crime would have been simple possession, a misdemeanor. Assuming Mr. McCandless could be deemed a principal offender, T.C.A. § 39-1-303, he would only have been guilty of a misdemeanor.

Therefore, we hold that Mr. McCandless was not committing a felony at the time of the fatal shooting.

813

The appellant also insists that he is entitled to prejudgment interest. T.C.A. § 47–14–109(b) provides:

"Liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned."

In *Knights of Pythias v. Allen,* 104 Tenn. 623, 58 S.W. 241 (1900), the Court held that a policy of life insurance fell within this section and would bear interest from the time it became due and payable. The allowance of interest was held to be "imperative." *See also Loftis v. Stuyvesant Insurance Co.,* 54 Tenn.App. 371, 390 S.W.2d 722 (1965). The interest starts to accrue on the date the debt is payable, unless another date is fixed in the contract itself. T.C.A. § 47–14–109(c). The rate is the legal rate as defined in T.C.A. § 47–14–103.

We cannot determine from the stipulated facts when the insurance became due and payable. Therefore, the cause will be remanded for the entry of a judgment in favor of the appellant in the amount of $20,000 plus interest at the legal rate from and after the time the insurance became due and payable.

The judgment of the chancellor is reversed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee.

LEWIS, J., and KIRBY MATHERNE, Special Judge, concur.