COLORADO COURT OF APPEALS                                    2016COA105

Court of Appeals No. 13CA1680
Adams County District Court No. 12CR2425
Honorable John E. Popovich, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rose Lucero,

Defendant-Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE NAVARRO
Furman and Miller, JJ., concur

Announced July 14, 2016

Cynthia H. Coffman, Attorney General, Brian M. Lanni, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     If a person requests and receives a controlled substance solely for her personal use, has she thereby entered into a conspiracy with the person who gave it to her to *distribute* the substance?  We conclude that she has not because in that scenario the two people have not agreed to distribute the substance to others.

¶ 2     Defendant, Rose Lucero, appeals the judgment of conviction entered on a jury verdict finding her guilty of conspiracy to distribute a controlled substance.  Because Lucero's acts did not constitute such a conspiracy, we vacate the judgment of conviction and remand for entry of a judgment of acquittal.

## I.     Factual and Procedural History

¶ 3     The prosecution charged Lucero with conspiring with her coworker to distribute codeine (contained in Tylenol 3), a schedule III controlled substance, as well as two counts of inducing her coworker to distribute the same substance.  *See* § 18-18-405(1)(a), C.R.S. 2015.  All of the charged offenses were class 4 felonies at the time of Lucero's acts.  *See* Ch. 424, sec. 3, § 18-18-405(2)(a)(II)(A), 2003 Colo. Sess. Laws 2682-83.  Evidence of the following was admitted at trial.

¶ 4     Between December 1, 2010, and April 30, 2012, Lucero's coworker obtained various prescription medications for her health and then shared them with others at the workplace. Several times over this period, Lucero requested medication from the coworker for Lucero's personal use (to relieve pain from cramps). Lucero made these requests in person, by phone, or by e-mail. Each time the coworker gave Lucero medication, she gave Lucero one pill for no reimbursement. There was no evidence that Lucero distributed the medication to others; on the contrary, the evidence showed (and the prosecution argued) that she took the pills herself.

¶ 5     Besides an e-mail with the subject line "Tylenol," Lucero's requests for medication were unspecific. The women gave inconsistent statements as to what particular medication was exchanged. The coworker testified that she gave Lucero "Advil," "my prescription of my ibuprofen," and "Midol." Lucero said in an interview that she received "Tylenol 3s," "Excedrin," and "ibuprofen." A detective testified that Tylenol 3 is a "codeine narcotic, 30 milligram, which under Schedule III anything less than 90 milligrams would fall under Schedule III."

¶ 6    The trial court granted Lucero's motion for judgment of acquittal on the inducement counts but denied her motion on the conspiracy count.  The jury convicted her of the conspiracy count, and the court sentenced her to one year of probation.

## II.    Analysis

¶ 7    Lucero contends that the prosecution presented insufficient evidence to prove that she conspired with her coworker to distribute a controlled substance.  Lucero relies on the following principle that has been recognized by numerous federal and state courts: Evidence of a buyer-seller relationship — without more — does not constitute a conspiracy to distribute drugs.  Of course, this case does not present a stereotypical sale of an illegal drug.  Lucero did not purchase drugs from a retail seller; she simply asked for painkillers (one at a time) from a coworker who agreed to provide them for free and for her personal use.  Nonetheless, Lucero argues that the aforementioned legal principle should protect her from a conspiracy conviction to the same extent it would shield a stereotypical retail buyer of a controlled substance.

¶ 8    We agree.  We conclude that this principle (i.e., a mere buyer-seller relationship does not constitute a drug distribution

conspiracy) applies in Colorado because Colorado's drug conspiracy statute is based on the model uniform law, which in turn is based on the federal statute. This precept also comports with Colorado's general conspiracy law, which punishes conspirators who have agreed on a common illicit purpose (e.g., to distribute drugs). Such commonality is absent where, as here, the evidence shows that the transferor intended only to distribute the drugs and the transferee intended only to possess them for personal use. Further, to conclude that such evidence is sufficient to convict the transferee of a conspiracy to distribute controlled substances would contravene the General Assembly's policy decision to punish simple possession less severely than conspiracy to distribute. Accordingly, we hold that the evidence was not sufficient to sustain Lucero's conspiracy conviction.

## A. Standard of Review

¶ 9 We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We consider whether the relevant evidence, when viewed as a whole and in the light most favorable to

the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *Id.* We also review questions of statutory interpretation de novo. *People v. Perez,* 2016 CO 12, ¶ 8.

## B. Relevant Legal Principles

### 1. Colorado Law

¶ 10 To prove the charge at issue here, the prosecution had to show that Lucero "knowingly . . . conspire[d] with one or more other persons, to . . . distribute . . . a controlled substance[.]" § 18-18-405(1)(a). Any mixture containing "[n]ot more than 1.8 grams of codeine per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts" constitutes a controlled substance listed in schedule III. § 18-18-205(2)(d)(II), C.R.S. 2015. As noted, conspiracy to distribute a schedule III controlled substance constituted a class 4 felony at the time of Lucero's acts. § 18-18-405(2)(a)(II)(A), 2003 Colo. Sess. Laws at 2683.

¶ 11 "Distribute" is defined as "to deliver other than by administering or dispensing a controlled substance, with or without remuneration." § 18-18-102(11), C.R.S. 2015. "Deliver" means "to

transfer or attempt to transfer a substance, actually or constructively, from one person to another[.]" § 18-18-102(7).

¶ 12    Colorado statutes do not define "conspiracy" in the specific context of section 18-18-405.  Under the general conspiracy statute, "[a] person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime[.]" § 18-2-201(1), C.R.S. 2015; *see People v Williams*, 183 P.3d 577, 581 (Colo. App. 2007) (looking to general conspiracy law to understand the offense of conspiracy to distribute a controlled substance).  Additionally, one of the conspirators must perform an overt act "in pursuance of" the conspiracy.  § 18-2-201(2).

¶ 13    Conspiracy is a specific intent crime that requires two distinct mental states.  *Palmer v. People*, 964 P.2d 524, 527 (Colo. 1998). "First, it requires the specific intent to agree to commit a particular crime.  Second, it requires the specific intent — or the conscious objective — to cause the result of the crime to which the conspirators agreed."  *Id.* at 525.  Therefore, "a conspiracy has legal significance only with respect to some other crime that serves as its

object."  *Id.* at 529.  Conspiracy requires proof of a "real agreement, combination, or confederation with a common design.  (Mere passive cognizance of the crime to be committed or mere negative acquiescence is not sufficient.)"  *Bates v. People,* 179 Colo. 81, 85, 498 P.2d 1136, 1138 (1972).

### 2. Uniform Controlled Substances Act and Federal Law

¶ 14    Colorado adopted a version of the Uniform Controlled Substances Act in 1981; Colorado's statute was modeled on the "Uniform Controlled Substances Act (1970)."  *See* Ch. 128, secs. 1-2, §§ 12-22-301 to -322, 18-18-101 to -109, 1981 Colo. Sess. Laws 707-34; Unif. Controlled Substances Act (1970) (amended 1973) tbl. of jurisdictions, 9 pt. 5 U.L.A. 853 (2007) (recognizing that Colorado adopted the Uniform Controlled Substances Act of 1970 in 1981); *see also People v. Abiodun,* 111 P.3d 462, 466 (Colo. 2005) ("In 1981, the general assembly adopted a version of the Uniform Controlled Substances Act, joining in a single proscription an entire range of conduct potentially facilitating or contributing to illicit drug traffic.") (footnote omitted).  In 1992, Colorado repealed the earlier uniform law and enacted the "Uniform Controlled Substances Act of 1992," which was modeled on the "Uniform

Controlled Substances Act (1990)." *See* Ch. 71, sec. 1, §§ 18-18-101 to -605, 1992 Colo. Sess. Laws 324-85; Unif. Controlled Substances Act (1990), 9 pt. 5 U.L.A. 781-851 (2007). The General Assembly expressed its intent that Colorado's statutes be construed consistently with the laws of other states adopting the uniform law. *See* § 18-18-604, 1992 Colo. Sess. Laws at 385 ("To the extent that this article is uniform, the judiciary may look to decisions regarding the 'Uniform Controlled Substances Act of 1990' among states enacting it, subject to rights and obligations provided under other Colorado statutes and the state Constitution.").

¶ 15    In 2010, the General Assembly enacted section 18-18-403.5, which punished simple possession of a controlled substance, and removed simple possession from the offenses listed in section 18-18-405(1)(a). *See* Ch. 259, sec. 4, § 18-18-403.5, 2010 Colo. Sess. Laws 1165 (effective Aug. 11, 2010). Excluding changes not relevant here, the statutes in effect at the time of Lucero's acts

(specifically, Article 18 of Title 18) were part of the Colorado Uniform Controlled Substances Act of 1992 as amended in 2010.[1]

¶ 16    The Uniform Controlled Substances Act is, in turn, based on the federal statute regulating controlled substances. *Commonwealth v. Doty*, 36 N.E.3d 604, 608 n.8 (Mass. App. Ct. 2015); Unif. Controlled Substances Act (1990) prefatory note, § 401 cmt., § 407 cmt., 9 pt. 5 U.L.A. 783, 829, 833 (2007); Unif. Controlled Substances Act (1970) (amended 1973) prefatory note, 9 pt. 5 U.L.A. 854-55 (2007); *see* 21 U.S.C. §§ 841, 846 (1988); *see also Abiodun*, 111 P.3d at 466 n.3 ("The prefatory note [to the Uniform Controlled Substances Act (1990)] makes clear that the Uniform Act 'was designed to complement the federal Controlled Substances Act, which was enacted in 1970,' and to 'maintain uniformity between the laws of the several States and those of the federal government.'") (citation omitted).

¶ 17    With the exception that federal law does not require proof of an overt act in furtherance of a conspiracy to violate the narcotics laws, federal drug conspiracy law generally reflects the same

---

[1] In 2013, the General Assembly enacted the Uniform Controlled Substances Act of 2013, introducing the concepts of a "drug felony" and a "drug misdemeanor." *See* §§ 18-18-101 to -606, C.R.S. 2015.

fundamental requirements as Colorado law. *See* 21 U.S.C. § 846 (2012); *United States v. Shabani,* 513 U.S. 10, 11 (1994). Under federal law, "[a] drug-distribution conspiracy . . . requires proof that the defendant knowingly agreed — either implicitly or explicitly — with someone else to distribute drugs." *United States v. Johnson,* 592 F.3d 749, 754 (7th Cir. 2010).

¶ 18    Accordingly, authorities interpreting the federal statute, as well as cases interpreting the laws of states that have adopted the uniform act, are instructive in construing Colorado's Uniform Controlled Substances Act. *People v. Perea,* 126 P.3d 241, 245 (Colo. App. 2005); *see* § 18-18-604, 1992 Colo. Sess. Laws at 385.

### 3. The Buyer-Seller Rule

¶ 19    Twelve circuits of the United States Courts of Appeal have addressed the sufficiency of the evidence in alleged drug distribution conspiracies. *State v. Allan,* 83 A.3d 326, 335 (Conn. 2014) (collecting cases). "All have held that evidence of a buyer-seller relationship, without more, does not constitute a conspiracy to distribute a controlled substance." *Doty,* 36 N.E.3d at

10

608 (same); *see Allan*, 83 A.3d at 335.[2]  Similarly, in states that

have adopted the Uniform Controlled Substances Act, many state

courts have held (relying mostly on federal cases) that evidence of a

buyer-seller relationship, without more, is insufficient to support a

conviction for conspiracy to distribute controlled substances.[3]  We

have discovered no cases to the contrary.

---

[2] *See, e.g.*, *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012); *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010); *United States v. Donnell*, 596 F.3d 913, 924-25 (8th Cir. 2010); *United States v. Bacon*, 598 F.3d 772, 776 (11th Cir. 2010); *United States v. Deitz*, 577 F.3d 672, 680 (6th Cir. 2009); *United States v. Boidi*, 568 F.3d 24, 30 (1st Cir. 2009); *United States v. Parker*, 554 F.3d 230, 234-36 (2d Cir. 2009); *United States v. Baugham*, 449 F.3d 167, 171-72 (D.C. Cir. 2006); *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999); *United States v. Ivy*, 83 F.3d 1266, 1285-86 (10th Cir. 1996); *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994); *United States v. Mills*, 995 F.2d 480, 485 (4th Cir. 1993).

[3] *See, e.g.*, *State v. Allan*, 83 A.3d 326, 339 (Conn. 2014); *Hernandez v. State*, 357 S.E.2d 131, 134 (Ga. Ct. App. 1987); *McBride v. State*, 440 N.E.2d 1135, 1137 (Ind. Ct. App. 1982); *Heckstall v. State*, 707 A.2d 953, 956 (Md. Ct. Spec. App. 1998); *Commonwealth v. Doty*, 36 N.E.3d 604, 608 (Mass. App. Ct. 2015); *State v. Pinkerton*, 628 N.W.2d 159, 163 (Minn. Ct. App. 2001); *State v. Serr*, 575 N.W.2d 896, 899 (N.D. 1998); *State v. Gunn*, 437 S.E.2d 75, 81 (S.C. 1993); *McCandless v. Equitable Life Ins. Co. of Iowa*, 721 S.W.2d 809, 812 (Tenn. Ct. App. 1986); *Zuniga v. Commonwealth*, 375 S.E.2d 381, 385 (Va. Ct. App. 1988); *State v. Smith*, 525 N.W.2d 264, 266-67 (Wis. 1995); *see also* Unif. Controlled Substances Act (1994) tbl. of jurisdictions, 9 pt. 2 U.L.A. 1-2 (2007) (every state except New Hampshire and Vermont has adopted a version of the Uniform Controlled Substances Act); *People*

¶ 20 This principle has attracted various labels, including the "'buyer-seller' rule," *United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996) (citation omitted), the "buyer-seller exception," *United States v. Parker*, 554 F.3d 230, 235 (2d Cir. 2009), the "retail buyer rule," *United States v. Flores*, 149 F.3d 1272, 1277 (10th Cir. 1998), and the "personal consumption" rule, *United States v. Mancari*, 875 F.2d 103, 105 (7th Cir. 1989). The upshot is: "A sale for the buyer's personal consumption, as distinct from a sale for resale, does not a conspiracy make." *Id.*

¶ 21 The reference to "buyer-seller" does not mean that a transfer for payment is required. A fuller description would be "transferor-transferee" because the rule "applies to an unpaid transfer in the same manner as to a paid sale, as all the reasons for the exception are equally applicable regardless of whether the transferee pays for the drugs." *Parker*, 554 F.3d at 235 n.3. For convenience, however, we often use the "buyer-seller" label in this opinion even though our discussion applies with equal force to a transfer of drugs without remuneration (as in the facts of this case).

---

*v. Perea*, 126 P.3d 241, 245 (Colo. App. 2005) ("[F]orty-eight states have adopted some version of the Uniform Act.").

¶ 22    Courts have set forth two rationales for applying the buyer-seller rule to examine whether sufficient evidence exists of a conspiracy to distribute drugs.  Some courts have reasoned that, in a simple buyer-seller relationship, there is "no singularity of purpose" that the parties will distribute drugs and "thus no meeting of the minds."  *Allan*, 83 A.3d at 335 (collecting cases).  As a result, these courts find lacking the agreement that is the essence of a conspiracy.  Other courts have concluded that, even if an agreement sufficient to constitute a conspiracy exists, the legislature did not intend to subject buyers who purchase drugs for personal use to the severe penalties intended for distributors or those who conspire to distribute.  *See id.* (collecting cases).  We will address each rationale in turn.

a. The Conspiratorial Agreement

¶ 23    The first line of reasoning stems from an important tenet of criminal law: conspiracy is a separate offense from the underlying crime.  *United States v. Brown*, 726 F.3d 993, 997 (7th Cir. 2013) ("Conspiracy is the extra act of *agreeing* to commit a crime."). "[C]onspiracy is treated as a separate crime because of the jointness of the endeavor.  A multiplicity of actors united to accomplish the

*same crime* is deemed to present a special set of dangers." *United States v. Moran*, 984 F.2d 1299, 1302-03 (1st Cir. 1993) (emphasis added); *see Brown*, 726 F.3d at 997 ("That agreement is a 'distinct evil.'") (citation omitted). Courts have explained, therefore, that mere proof of a buyer-seller agreement does not support a conspiracy conviction "because there is no common illegal purpose: In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell." *United States v. Donnell*, 596 F.3d 913, 924-25 (8th Cir. 2010) (citations omitted); *Allan*, 83 A.3d at 335; *Doty*, 36 N.E.3d at 609.

¶ 24     In other words, because an agreement to "the same joint criminal objective" is the core of a conspiracy, the absence of such an agreement dooms a conspiracy conviction:

> What distinguishes a conspiracy from its substantive predicate offense is not just the presence of any agreement, but an agreement with the same joint criminal objective — here the joint objective of distributing drugs. This joint objective is missing where the conspiracy is based simply on an agreement between a buyer and a seller for the sale of drugs. Although the parties to the sales agreement may both agree to commit a crime, they do not have the joint criminal objective of distributing drugs.

*United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999); *see United States v. Colon*, 549 F.3d 565, 569-70 (7th Cir. 2008); *see also Brown*, 726 F.3d at 1001 ("People in a buyer-seller relationship have not agreed to advance further distribution of drugs; people in conspiracies have. That agreement is the key."). Consequently, these courts have held that, to prove a conspiracy to distribute drugs, "the government must offer evidence establishing an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals." *Johnson*, 592 F.3d at 755; *Colon*, 549 F.3d at 569 ("What is necessary and sufficient is proof of an agreement to commit a crime other than the crime that consists of the sale itself.") (citation omitted); *Allan*, 83 A.3d at 340.

¶ 25    The above reasoning is consistent with Colorado law. As Colorado courts have explained, conspiracy is "a separate and distinct offense from that which is the object of the conspiracy, and as such may be punishable by a consecutive sentence." *People v. Madonna*, 651 P.2d 378, 388 (Colo. 1982) (citation omitted); *People v. Osborne*, 973 P.2d 666, 673 (Colo. App. 1998). And the offense of conspiracy requires the defendant to "possess the specific intent to

agree to commit a particular crime," not merely to agree to commit crime in general. *Palmer*, 964 P.2d at 527, 529 ("The crime of conspiracy to commit reckless manslaughter would require that the defendant have the specific intent to commit reckless manslaughter," which is legally and logically impossible.). Hence, the conspirators must have agreed to commit the same particular crime (e.g., distributing drugs). However, "when a buyer intends only to purchase drugs from a seller, both parties do not unite in the same mental objective because they have different intentions: one has the intention to buy and the other has the intention to sell." *Allan*, 83 A.3d at 340; *see United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992) ("[A] consumer generally does not share the distribution objective and thus would not be part of a conspiracy to *distribute* crack cocaine.").

¶ 26 Accordingly, in line with the extensive authority from other jurisdictions, we hold that a mere buyer-seller relationship, without more, does not constitute a conspiracy to distribute a controlled substance. Because "the focus of conspiracy is not on the unlawful object of the conspiracy, but on the process of agreeing to pursue that object," the prosecution must present evidence of "an

16

agreement *in addition to* the purchase and sale agreement between the two parties." *Allan*, 83 A.3d at 340; *see Johnson*, 592 F.3d at 755; *Colon*, 549 F.3d at 569. To prove the requisite conspiratorial agreement to distribute drugs, the prosecution must proffer evidence of an agreement to advance further distribution of the drugs to others beyond the alleged conspirators. *Brown*, 726 F.3d at 998; *see Allan*, 83 A.3d at 334, 340 (holding that, to prove a conspiracy to distribute drugs, the state must prove that the conspirators specifically agreed and intended to distribute drugs "to another person"); *Doty*, 36 N.E.3d at 610 (concluding that the state failed to prove a drug distribution conspiracy because of the absence of evidence that the defendant and his alleged co-conspirator agreed to distribute "to others").

b. Legislative Distinction Between Possession and Distribution

¶ 27 What if we were to assume, as an alternative to our preceding analysis, that a buyer-seller relationship satisfies the definition of a conspiracy? We would still conclude that evidence of a buyer-seller relationship, without more, is insufficient to convict the buyer of a conspiracy to distribute drugs. We are persuaded by those courts that have held that the legislature did not intend to subject buyers

17

who purchase drugs for personal use to the severe penalties intended for distributors or those who conspire to distribute.

¶ 28    For instance, the Second Circuit has determined that, "[a]s a literal matter," a buyer-seller relationship satisfies the "customary definition" of a conspiracy, with the objective of an illegal transfer of drugs. *Parker*, 554 F.3d at 234. Nonetheless, the Second Circuit "has carved out a narrow exception to the general conspiracy rule for such transactions." *Id.* Under this exception, "the objective to transfer the drugs from the seller to the buyer cannot serve as the basis for a charge of conspiracy to transfer drugs." *Id.*

¶ 29    This exception "preserves important priorities and distinctions of the federal narcotics laws, which would otherwise be obliterated." *Id.* The federal approach to controlled substances "distinguishes importantly between, on the one hand, distribution of a controlled substance, which is heavily punished, and, on the other, possession or acquisition of a controlled substance, which is punished far less severely, if at all." *Id.*[4] And conspiracy to distribute is punished in

---

[4] As the Second Circuit explained, "[n]o doubt, considerations underlying this distinction include a policy judgment that persons who acquire or possess illegal drugs for their own consumption because they are addicted are less reprehensible and should not be

18

the same manner as distribution. *Id.* (citing 21 U.S.C. § 846).

Therefore,

> if an addicted purchaser, who acquired drugs for his own use and without intent to distribute it to others, were deemed to have joined in a conspiracy with his seller for the illegal transfer of the drugs from the seller to himself, the purchaser would be guilty of substantially the same crime, and liable for the same punishment, as the seller.

*Id.* at 235. In that event, "[t]he policy to distinguish between transfer of an illegal drug and the acquisition or possession of the drug would be frustrated. The buyer-seller exception thus protects a buyer or transferee from the severe liabilities intended only for transferors." *Id.*

¶ 30    Other courts have adopted similar reasoning. *See, e.g., United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012) ("The [buyer-seller] rule shields mere acquirers and street-level users, who would otherwise be guilty of conspiracy to distribute, from the more severe penalties reserved for distributers."); *Ivy*, 83 F.3d at 1285-86 ("[T]he purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from

---

punished with the severity directed against those who distribute drugs." *Parker*, 554 F.3d at 234-35.

street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy."); *Doty*, 36 N.E.3d at 610 (punishing a "street-level" buyer the same as a seller "is clearly contrary to the intent of the statute, which contains graduated penalties based on the fundamental distinction between possession and distribution"); *State v. Pinkerton*, 628 N.W.2d 159, 163 (Minn. Ct. App. 2001) ("[T]he legislature would not intend that a seller and a buyer of controlled substances could be subject to the same penalty," as would be the case "[i]f an agreement solely between a seller and a buyer of controlled substances can constitute conspiracy.").

¶ 31    An analogous graduated penalty structure exists in Colorado. At the time of Lucero's acts, Colorado law punished distribution of a controlled substance more severely than simple possession. *Compare* § 18-18-403.5, 2010 Colo. Sess. Laws at 1165 (possession), *with* § 18-18-405, 2003 Colo. Sess. Laws at 2682-83 (distribution).[5]  And conspiracy to distribute was punished the same as distribution.  *See* § 18-18-405, 2003 Colo. Sess. Laws at

---

[5] The same is generally true under current law.  *See* § 18-18-403.5(2), C.R.S. 2015; § 18-18-405(2), C.R.S. 2015.

2682-83. As pertinent here, conspiracy to distribute a schedule III controlled substance was a class 4 felony while possession of that same substance was a class 1 misdemeanor. *See* § 18-18-403.5(2)(c), 2010 Colo. Sess. Laws at 1165; § 18-18-405(2)(a)(II)(A), 2003 Colo. Sess. Laws at 2682-83.

¶ 32 As a consequence, we join those courts that have recognized that a mere buyer-seller agreement does not constitute a conspiracy to distribute because such conspiracy liability would frustrate the legislative policy to distinguish between distribution of an illegal drug and the acquisition or possession of the drug. *Cf.* § 2-4-201(1), C.R.S. 2015 ("In enacting a statute, it is presumed that: . . . (b) The entire statute is intended to be effective; [and] (c) A just and reasonable result is intended."); *Williams v. Crop Prod. Servs., Inc.*, 2015 COA 64, ¶ 5 (When interpreting a statute, we consider "the dual contexts of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to the statute's language."). Of course, this conclusion does not protect either the seller or buyer from a charge that they conspired together to distribute drugs if the evidence supports a finding that they shared a conspiratorial purpose to

21

advance other transfers, whether by the seller or by the buyer. *Parker*, 554 F.3d at 235.

## C. Application

¶ 33 Nothing in the record suggests that Lucero and her coworker agreed and intended that Lucero would distribute the pills to others. For example, the record does not show — and the prosecution did not argue — that the amount of the controlled substance transferred each time was significant enough to permit the inference of further distribution. Instead, Lucero received only one pill every time. *Cf. Parker*, 554 F.3d at 238-39 (holding that buyer-seller exception did not apply where the defendants "purchased with such frequency and in such quantity" from sellers to support a finding that "sellers and buyers had joined in a cooperative venture, in which both . . . had a stake in additional transfers of drugs beyond the transfers from the original seller to the original buyer"); *Flores*, 149 F.3d at 1277 (holding that buyer-seller rule did not apply where the defendant "was not a street[-]level retail drug *purchaser*, he was a wholesale *seller* who knowingly helped supply large quantities of methamphetamine to a distribution organization").

¶ 34    In addition, Lucero indicated, without contradiction, that she consumed the pills to relieve her ailments.  She described the typical exchange: "I [would] just go up and [the coworker] handed me a pill and I [would] just go back down to work and be able to stay at work the rest of the day."  In fact, the prosecutor in closing argument acknowledged that Lucero intended to take the pills herself: "She illegally conspires with [her coworker] to get the Tylenol 3.  Why?  Because the Tylenol 3 makes her feel good."

¶ 35    As discussed, "[w]hen two parties are charged with agreeing to distribute drugs, evidence that the parties understood their transactions to do no more than support the buyer's personal drug habit is antithetical to a finding of conspiracy."  *Dekle,* 165 F.3d at 829-30 (explaining that multiple transactions which "revealed nothing more than isolated purchases for personal consumption" do not support a conspiracy conviction); *see United States v. McIntyre,* 836 F.2d 467, 471-72 (10th Cir. 1987) (recognizing that the defendant's multiple purchases of cocaine did not sufficiently prove that he "had a common purpose with his coconspirators to possess and distribute cocaine").  Accordingly, we conclude that the prosecution presented insufficient evidence to sustain Lucero's

23

conspiracy conviction and that a judgment of acquittal must be entered on remand. *See People v. Sprouse*, 983 P.2d 771, 776 (Colo. 1999).

¶ 36    Finally, we need not resolve the parties' dispute over whether the Wharton rule applies here. The Wharton rule provides that "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *People v. Bloom*, 195 Colo. 246, 249, 577 P.2d 288, 290 (1978) (citation omitted). This rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli v. United States*, 420 U.S. 770, 782 (1975). But the narrower buyer-seller rule that we have discussed at length is sufficient to resolve this appeal. Although "[s]ome have thought [the buyer-seller rule] to follow from the so-called Wharton rule," *Moran*, 984 F.2d at 1302, the numerous cases that we have cited in support of the buyer-seller rule do not rely on the Wharton rule or suggest that the two principles are necessarily intertwined. Indeed, the justification for the Wharton rule ("a crime legally requiring a plurality of actors . . . should not have a conspiracy

charge superimposed upon it," *id.*) differs from the chief rationale underlying the buyer-seller rule (a mere buyer-seller relationship lacks the conspiratorial agreement to commit the same crime).[6]

¶ 37    In light of our disposition, we do not address Lucero's other challenges to her conviction.

### III.    Conclusion

¶ 38    The judgment is vacated, and the case is remanded for entry of a judgment of acquittal.

JUDGE FURMAN and JUDGE MILLER concur

---

[6] In any event, this case is distinguishable from *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978), which held that the Wharton rule did not preclude the defendant's conviction for conspiracy to sell illegal drugs.  The defendant there was a seller not a mere acquirer, and he conspired with three other people to sell the drugs. *See id.* at 248-50, 577 P.2d at 290-91.  Further, *Bloom* predated Colorado's adoption of the Uniform Controlled Substances Act as well as the many cases discussing the buyer-seller rule.