24CA0874 Peo v Montano 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0874
Alamosa County District Court No. 23CR129
Honorable Crista Newmyer-Olsen, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christian Montano,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Harris and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Philip J. Weiser, Attorney General, Gina M. Nykerk, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Mary Cheung, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 Defendant, Christian Montano, appeals his convictions for conspiracy to commit first degree assault and third degree assault. He argues that (1) the evidence was insufficient to sustain his conspiracy conviction; (2) the district court impermissibly lowered the prosecution's burden of proof through its silence during the prosecution's voir dire; and (3) the district court erred by admitting evidence of other acts in violation of CRE 404(b). We affirm.

## I. Background

¶ 2 In January 2023, Montano was riding in a car driven by Janessa Martinez, along with two of his friends and the victim, whom Montano did not know. While in the car, the group spoke on the phone with Alejandro Sandoval, who was then in jail. Sandoval, a member of the same gang as Montano, was dating Martinez and believed that Martinez had been cheating on him with the victim.

¶ 3 On learning that Martinez was with the victim, Sandoval spoke with Montano, who told Sandoval he thought "some fuck shit is going on." Sandoval then directed Montano, who had walked into a store, to return to the car and make sure that Martinez and the victim did not leave. Their conversation continued as follows:

1

Sandoval: . . . I want you guys to drag that fool out of the fucking car and beat the fucking shit out of him, bro.

Montano: Okay, come on.

Sandoval: Do you hear me? No, there's no end. Make an example. Beat . . . put the fucking boot to his motherfucking face. Crunch his fucking jaw. Take the fucking glass bottle to his fucking head. All that shit, bro.

Montano: . . . Carnal, I love you. I got you, homie.

Sandoval: But stay on the phone because I want . . . I want to hear this shit, bro. I want . . . and hand the phone to my lady while you're doing it. Let me talk to her. Go jump in the car and let me talk to her.

Montano: Alright, I'm walking . . . . Hold on. I'm on my way.

¶ 4     After Montano returned to the car, Sandoval called and spoke

to him again:

Sandoval: . . . Don't let that fool leave with my lady. Do you hear me?

Montano: I totally got you, brother. I got you, homie.

Sandoval: Okay, I'll tell you what you do though, bro. I know you got me. But don't let that fool leave with my lady. When she takes off and she gets pissed, that fool stays there with you.

Montano: . . . Did you want us to fucking . . . do that?

Sandoval: Handle that shit right now.

Montano: Yeah, we'll fuck him up.

Sandoval: But stay on, stay on the phone.

Montano: Yeah, I will.

Sandoval: Put it down, so I can hear it.

¶ 5    Around that time, Martinez pulled up to the home of one of the passengers to drop the group off.  When she stopped, Montano got out of the car with the victim and one of the other passengers.  Montano approached the victim and hit him in the face.  Then, the other man hit him, and the victim fell to the ground, tucking into a ball.  The two men repeatedly hit the victim in the head and upper body and kicked him in the head and face.  After about ten seconds, Montano told the other man to check the victim's pockets.  As he was doing so, the victim felt a gun in the man's hands.  The gun fired, hitting the other man, and the victim ran away.  The victim sustained injuries to his head, face, ribs, and back.

¶ 6     Montano was charged with robbery[1] and conspiracy to commit first degree assault.  Because Montano's theory was that he had been overcharged and had committed only the crime of third degree assault, the district court also instructed the jury as to that offense.  A jury acquitted Montano of robbery but convicted him of conspiracy to commit first degree assault and third degree assault.

## II.     Sufficiency of the Evidence

¶ 7     Montano contends that the evidence was insufficient to support his conviction for conspiracy to commit first degree assault because there was no evidence of an agreement to commit *first degree assault,* as opposed to a lesser assault.  We disagree.

### A.     Standard of Review and Applicable Law

¶ 8     In reviewing the sufficiency of the evidence, we review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain the conviction.  *Johnson v. People*, 2023 CO 7, ¶ 13.  We do not "serve as a thirteenth juror and consider whether [we] might have reached a different conclusion."  *People v. Harrison*, 2020 CO 57, ¶ 33.  Instead, we view the evidence

---

[1] Montano was originally charged with aggravated robbery, but the People elected at trial to reduce the charge to robbery.

as a whole and in the light most favorable to the prosecution to determine if it is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Johnson*, ¶ 13 (citation omitted).

¶ 9 A person commits conspiracy to commit a crime "if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime." § 18-2-201(1), C.R.S. 2025.[2] The defendant must have the "specific intent to agree to commit a particular crime." *People v. Lucero*, 2016 COA 105, ¶ 13 (citation omitted). And the conspirators "must have agreed to commit the same particular crime," "not merely . . . to commit crime in general." *Id.* at ¶ 25.

¶ 10 As relevant in this case, a person commits first degree assault if, "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." § 18-3-202(1)(a), C.R.S. 2025. "Serious bodily injury" means, in pertinent part, "bodily injury that . . . involves a

---

[2] The defendant or a co-conspirator must also take an overt act in pursuance of the conspiracy. § 18-2-201(2), C.R.S. 2025.

5

substantial risk of death; a substantial risk of serious permanent disfigurement; a substantial risk of protracted loss or impairment of the function of any part or organ of the body; or breaks [or] fractures." § 18-1-901(3)(p), C.R.S. 2025. A "[d]eadly weapon" is a firearm or "[a] knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." § 18-1-901(3)(e)(I)-(II).

### B. Analysis

¶ 11　　Montano argues that the evidence failed to establish an agreement to commit first degree assault because (1) his responses to Sandoval were ambiguous; and (2) even if there was an agreement to commit *an* assault, there was no evidence that Montano agreed to commit the severe assault Sandoval described.

¶ 12　　As to Montano's first point, the recordings of the phone calls were sufficient to support a finding that Montano agreed with Sandoval to assault the victim. In the first call, Montano twice responded affirmatively to Sandoval's directions to assault the victim, telling him, "I got you." Then, in the second call, Montano asked Sandoval to confirm he wanted them to "do that." When

6

Sandoval told him to "[h]andle that shit right now," Montano assured him he would, saying, "Yeah, we'll fuck him up." A jury could reasonably infer from these exchanges that Montano was agreeing to do what Sandoval had instructed him to do.

¶ 13     This evidence of an express agreement was bolstered by Montano's conduct right after the second call. *See People v. Robinson*, 874 P.2d 453, 460 (Colo. App. 1993) ("[P]roof of a conspiracy . . . can be inferred from the acts of the parties."). Shortly after Montano told Sandoval they would "fuck [the victim] up," Montano got out of the car and, with the other man, began hitting and kicking the victim. And consistent with Sandoval's instruction to "put the . . . boot to [the victim's] . . . face," the victim testified that Montano "stomp[ed] on [the victim's] head" and repeatedly kicked him in the face. The temporal proximity and similarity between Montano's conduct and Sandoval's instructions further supported the inference of an agreement between them.

¶ 14     We also conclude that, viewed in the light most favorable to the prosecution, the evidence was sufficient to support a finding that Montano's agreement was to commit first degree assault — that is, to cause the victim serious bodily injury with a deadly

7

weapon. Sandoval instructed Montano to, among other things, "put the . . . boot to [the victim's] . . . face," "[c]runch [the victim's] . . . jaw," and "[t]ake the . . . glass bottle to [the victim's] . . . head."[3] To the extent "crunch[ing]" the victim's jaw meant breaking it, that is per se serious bodily injury. *See* § 18-1-901(3)(p); *People v. Daniels*, 240 P.3d 409, 412 (Colo. App. 2009) ("[A]ny break or fracture is sufficient to establish 'serious bodily injury' . . . ."). And there was testimony that both kicking someone in the head with a boot and hitting someone in the head with a glass bottle could cause death, broken bones, or dysfunction of a major bodily organ — any of which would constitute serious bodily injury. *See* § 18-1-901(3)(p).

¶ 15    Moreover, when used to inflict such injury, both a boot and a bottle may be "deadly weapons." *See* § 18-1-901(3)(e)(II); *Bowers v. People*, 617 P.2d 560, 563 (Colo. 1980) (holding that glass bottle "was a deadly weapon because it was capable of producing death or

---

[3] We reject Montano's assertion that Sandoval's statements were inadmissible hearsay. Those statements were not assertions of fact to which the hearsay rule applies. *See People v. Phillips*, 2012 COA 176, ¶ 104 ("[I]mperative declarations, such as orders or instructions . . . ordinarily fall outside the purview of the hearsay rule." (citation omitted)). Regardless, in assessing the sufficiency of the evidence, we must consider all the evidence admitted at trial, properly admitted or not. *People v. Hard*, 2014 COA 132, ¶ 39.

serious bodily injury"), *superseded by statute on other grounds*, Ch. 212, sec. 2, § 18-1-903(3)(e), 1981 Colo. Sess. Laws 972, *as recognized in Montez v. People*, 2012 CO 6; *Grass v. People*, 471 P.2d 602, 605 (Colo. 1970) ("[A]n assault with a shoe, depending on the manner in which the shoe is used, may constitute an assault with a deadly weapon . . . ."). Thus, a jury could reasonably find that by agreeing to do what Sandoval directed, Montano had agreed to cause the victim serious bodily injury with a deadly weapon.

¶ 16    Montano asserts that he did not actually cause the victim serious bodily injury. But a person can conspire to commit a crime without committing the underlying crime. *See People v. Osborne*, 973 P.2d 666, 673 (Colo. App. 1998) ("Conspiracy and the crime which is the object of the conspiracy are different and distinct offenses."). In other words, that Montano did not ultimately commit first degree assault — whether because the victim escaped or for some other reason — does not mean he did not conspire to do so. Nor were his actions so incongruent with Sandoval's instructions as to foreclose a reasonable inference that he had agreed to commit a more serious assault than the one he committed. To the contrary,

as noted above, there was evidence that Montano "put [his] . . . boot to [the victim's] . . . face," just as Sandoval had directed.

¶ 17    Montano also contends that his expressions of assent were too vague to establish an agreement on a "common illicit purpose." *Lucero*, ¶ 8.  But while some of Montano's statements may have been ambiguous, others were not.  For example, in response to Sandoval's most detailed instructions, Montano responded, "I got you."  And Montano closed the second call by confirming, "[W]e'll fuck him up."  To the extent these statements could be construed merely as an agreement to commit a lesser assault, that was for the jury to decide.  *See People v. Perez*, 2016 CO 12, ¶ 31 ("The jury, not the court, must perform the fact-finding function when conflicting evidence — and conflicting reasonable inferences — are presented.").  Our role is limited to determining whether the evidence supports the jury's verdict.  *Id.*

¶ 18    Viewed in the light most favorable to the prosecution, Montano's responses to Sandoval's explicit instructions and his ensuing actions were sufficient to support a finding by a reasonable jury that he and Sandoval agreed to commit first degree assault —

even if the evidence could also support a contrary conclusion. The evidence was therefore sufficient to support Montano's conviction.

## III. Reasonable Doubt

¶ 19     Montano next contends that the district court lowered the prosecution's burden of proof by remaining silent as the prosecutor discussed a hypothetical about the reasonable doubt standard during voir dire. He argues that the district court implicitly adopted the prosecutor's statements by failing to correct them.

## A. Additional Background

¶ 20     Before voir dire, the district court instructed the jury on the presumption of innocence and the burden of proof beyond a reasonable doubt, using the agreed-upon model instruction.[4]

¶ 21     During voir dire, the prosecution told a story about her dog to engage the jurors in a conversation about the beyond a reasonable doubt standard. She explained that "one of the rules in [her] house" is that the dog cannot jump on the kitchen counter, and "if she does that, she is guilty of trespassing on the kitchen counter." She went on to say that she had left a sandwich on the counter that

_____

[4] The prosecutor and defense counsel agreed to use a previous version of the model reasonable doubt instruction.

morning, and when she returned, the sandwich was on the floor and the dog was eating it. She asked the jurors whether, based on that information, the dog was "guilty of trespassing" on the counter.

¶ 22 After several jurors gave their responses, mostly agreeing the dog was guilty, the prosecutor extended the hypothetical. Now, the dog was on trial and "testified" that a neighbor had entered the house and knocked the sandwich off the counter. The prosecutor asked a juror whether that scenario was "possible." When the juror said it was "possible, but not likely," the prosecutor explained that "reasonable doubt" is "a doubt based on reason and common sense," not a "vague or speculative or imaginary doubt." She then asked several jurors whether the dog's explanation was reasonable and tied that question back to the reasonable doubt standard:

> [E]veryone would agree with me, it is physically possible?
>
> And so we go back to this concept . . . do the People have to prove it beyond all doubt? And that's kind of the concept. You are in charge of filtering information through your reason and common sense in coming to a conclusion that makes sense to you.

¶ 23 The prosecutor asked one more juror what they thought "about [the] dog and her guilt of trespassing and her explanation."

12

Defense counsel then objected (outside the hearing of the jury) "to the use of an analogy to describe the concept of reasonable doubt." He asserted that "the best practice would be for the [c]ourt to just read the reasonable doubt instruction to the jury again." Although the court did not find the prosecutor's analogy improper, it agreed to reread the reasonable doubt instruction. Defense counsel made no further objection and did not request any additional relief.

## B.    Invited Error and Waiver

¶ 24    The People argue that Montano invited or waived any error in the district court's response to the prosecutor's statements by proposing the exact curative measure the district court provided — rereading the reasonable doubt instruction to the jury. We agree. More specifically, Montano's challenge to the district court's actions *after* he objected is barred by the invited error doctrine, while his challenge to the district court's silence *before* he objected is waived.

¶ 25    The invited error doctrine "prevents a party from complaining on appeal of an error that he or she has invited or injected into the case." *People v. Rediger*, 2018 CO 32, ¶ 34. The doctrine applies when "a party requests that the court take a particular action and then later complains of that same action." *Horton v. Suthers*, 43

13

P.3d 611, 619 (Colo. 2002). Waiver is the intentional relinquishment of a known right or privilege. *Rediger,* ¶ 39. Like invited error, waiver forecloses appellate review. *Id.* at ¶ 40.

¶ 26 Here, after the prosecutor's discussion of the hypothetical, defense counsel objected on the ground that it was an improper reasonable doubt analogy — the same argument Montano makes on appeal. Defense counsel then said that "the *best practice* would be for the [c]ourt to just read the reasonable doubt instruction to the jury again." (Emphasis added.) The district court did exactly that. To the extent Montano now contends that the court should have done more — for example, by telling the jury the prosecutor's statements were incorrect — he invited any error by telling the court that simply rereading the instruction was the *best* practice.[5] *See Horton,* 43 P.3d at 618 ("[T]he [invited error] doctrine '[o]perates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be

---

[5] Montano points out that the district court did not agree with defense counsel that the prosecutor's analogy was improper. But whether or not the court agreed with defense counsel about the alleged error, it nonetheless granted the requested remedy.

error.'" (citation omitted)); *cf. Montoya v. People*, 2017 CO 40, ¶ 33 ("[A] party is precluded from arguing instructional error on appeal . . . when the instruction at issue was requested by that party.").

¶ 27　Similarly, to the extent Montano challenges the court's silence *before* his objection, he waived any such error by telling the court that reading the instruction again would be sufficient and failing to request any further corrective action. By that time, defense counsel was aware of the purported error and agreed that the appropriate solution was to reread the instruction. In doing so, Montano either expressly abandoned any further objection or clearly manifested his intent to do so. *See Forgette v. People*, 2023 CO 4, ¶ 28.

¶ 28　Thus, by both invited error and waiver, we conclude that Montano surrendered any challenge to the district court's response

to the prosecutor's comments by identifying the alleged error and urging the solution the court adopted.[6] *See Horton*, 43 P.3d at 619.

## IV.   Testimony About Boots as Deadly Weapons

¶ 29    Montano also argues that the district court erred by allowing testimony from a detective that gangs commonly use boots as deadly weapons. He characterizes this testimony as inadmissible other act evidence under CRE 404(b). We again disagree.

### A.   Additional Background

¶ 30    At trial, the prosecutor asked the detective if a boot could be a deadly weapon. The detective said that it could.

¶ 31    The prosecutor continued:

> Q: Have you seen that before?
>
> A: Yes.
>
> Q: And in your experience, sir, as a detective
> with the Alamosa Police Department, but also
> with your particular specialty in drug

---

[6] We also note that Montano does not dispute the accuracy of the district court's instruction on the reasonable doubt standard, which was the only thing the *district court* said to the jury about that standard. *See Pettigrew v. People*, 2022 CO 2, ¶ 42 (holding that district court did not lower prosecution's burden of proof where court repeatedly and correctly instructed jury on reasonable doubt standard); *People v. Vialpando*, 2022 CO 28, ¶ 41 (holding that prosecutor's illustrations of reasonable doubt did not lower burden of proof because jury was presumed to follow court's instructions).

16

> interdiction as well as gangs, is that a common use of force used by gang members?
>
> A: Yes.
>
> Q: And how does one use a boot . . . as a deadly weapon?
>
> A: They could stomp on their face in a downward motion.  They have slang terms called "curb stomping" where they pull a person's jaw bone apart and stomp on the back of their head.

¶ 32    At this point, defense counsel objected on the ground that the detective was offering a legal conclusion that was inconsistent with the legal definition of a deadly weapon.  The district court overruled the objection on that ground but sustained it as to "curb stomping" on relevance grounds because that did not occur in this case.

¶ 33    The prosecutor then asked if the detective had "seen instances where [a boot stomping on someone's head] creates broken jaws."  Defense counsel again objected, this time on the ground that the testimony confused the issues under CRE 403 and invaded the province of the jury.  The court again overruled the objections.

¶ 34    The prosecutor continued, without further objection:

> Q: Detective, have you seen boots stomping on someone's head cause skull fractures?

A: Yeah. Broken bones, skull fractures, stuff like that, yes.

Q: Brain bleeds?

A: Yes.

Q: Have you seen it cause other facial fractures, not just the jaw?

A: Like I said, the orbital bone in those areas.

Q: And is that something that is commonly used in — among gang members not just here in the Valley but across the state and across the country to inflict the most amount of injury?

A: Yes

### B. Standard of Review and Applicable Law

¶ 35    We review the district court's evidentiary rulings, including its admission of other act evidence under CRE 404(b), for an abuse of discretion. *People v. Owens*, 2024 CO 10, ¶ 105. A court abuses its discretion "when its ruling is manifestly arbitrary, unreasonable, unfair, or based on an incorrect understanding of the law." *Id.*

¶ 36    Although Montano objected to the testimony above on other grounds, he did not object under CRE 404(b) — which is the only argument he makes on appeal. *See People v. Gee*, 2015 COA 151, ¶ 45 (noting that an issue is unpreserved if "an objection . . . was

made in the trial court on grounds different from those raised on appeal"). We therefore review this issue for plain error, meaning we will reverse only if the error was "obvious, substantial, and 'so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'" *People v. Snelling*, 2022 COA 116M, ¶ 33 (citation omitted).

¶ 37     Under CRE 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." But such evidence is admissible "for almost any non-propensity purpose." *People v. Rojas*, 2022 CO 8, ¶ 28. To be admissible, other act evidence must be (1) logically relevant (2) to a material fact (3) independent of the prohibited inference of the defendant's bad character, and (4) its probative value must not be substantially outweighed by the risk of unfair prejudice. *Id.* at ¶ 27.

### C.     Analysis

¶ 38     To reiterate, Montano's sole argument on appeal — and the only one we address — is that the detective's testimony about gang members' use of boots to cause serious injuries violated CRE 404(b). He relies on *People v. Trujillo*, 2014 COA 72, which held

that "gang affiliation evidence" may be subject to CRE 404(b) when it "involves a separate and distinct episode wholly independent from the offense charged." *Trujillo*, ¶¶ 70-71 (citation omitted).

¶ 39　　But unlike *Trujillo*, the detective here did not testify as to any act by Montano, or even by other members of his gang. *See id.* at ¶¶ 76, 84 (addressing testimony about *the defendant's* gang culture and gang rules, including that "[the defendant] and his fellow gang members had engaged in similar violent acts in the past"). Although he testified that gang members "across the country" commonly use boots to cause serious injuries, he did not tie that general practice to any act of Montano or his gang, much less identify a "separate and distinct episode" when Montano had done so. *Id.* at ¶ 71 (citation omitted). The detective's testimony about what others had done, or about what he had seen in other cases, therefore did not implicate CRE 404(b) because it was not evidence of Montano's "other crime, wrong, or act." *See Trujillo*, ¶ 70 (noting that CRE 404(b) applies when the evidence "could be viewed as evidence about another crime, wrong, or act"); *People v. Hall*, 60 P.3d 728, 736 (Colo. App. 2002) (holding that CRE 404(b) did not apply where evidence did not relate to the defendant's actions).

¶ 40    Moreover, even if the testimony could be construed as other act evidence, its logical relevance did not depend on an inference about Montano's character.[7]  *See Rojas*, ¶ 27.  Indeed, because the detective never suggested that *Montano* had used his boot to cause injury, it is questionable whether Montano's character was implicated at all.  *See id.* at ¶ 43 ("If evidence doesn't implicate the defendant's character, Rule 404(b) doesn't govern its admissibility.").  But regardless, the testimony was logically relevant to the nature of the agreed-upon assault and what Montano intended by his assent, independent of any character inference.

¶ 41    To convict Montano of conspiracy to commit first degree assault, the prosecution had to prove that he agreed to cause the victim serious bodily injury with a deadly weapon.  *See* § 18-3-202(1)(a).  An object is a deadly weapon if it is (1) used or intended to be used as a weapon and (2) capable of causing death or serious bodily injury.  § 18-1-901(3)(e)(II); *People v. Shawn*, 107 P.3d 1033,

---

[7] Montano does not dispute that the evidence was logically relevant. He argues only that the logical relevance was not independent of the prohibited character inference.  We note that the absence of any indication that Montano or his gang used boots in the manner described reduces the probative value of this testimony, but it also supports the conclusion that CRE 404(b) does not apply.

1035 (Colo. App. 2004). The detective's testimony that boots are commonly used to cause serious bodily injury made it more likely that by agreeing to "put the . . . boot to [the victim's] . . . face," Montano was agreeing to cause the victim serious bodily injury and to use the boot as a deadly weapon in doing so — not because Montano was a violent person who had done it before, but because of his presumed understanding of what that phrase conveyed.

¶ 42 Montano asserts that the detective's testimony was too generalized to indicate any similarity between the practices he described and Montano's conduct in this case. And if the evidence had been offered to prove the completed assault, he might have a point. *See Trujillo*, ¶ 84 (holding that testimony about gang rules was inadmissible to show motive where there was no evidence that the charged assault was gang related). But Montano's conduct in completing the assault was not at issue — he was not charged with that. As to Montano's agreement, it did not matter *how* he agreed to use the boot, other than that he agreed to use it as a deadly weapon, and that it could be so used. *See People v. Rath*, 44 P.3d 1033, 1042 (Colo. 2002) ("Under a particular evidential hypothesis,

22

similarity may not be significant at all, and if significant, the nature and extent to which similarity is important may vary greatly.").

¶ 43     We therefore conclude that the district court did not abuse its discretion, much less plainly err, by not excluding the detective's testimony as impermissible other act evidence under CRE 404(b).

## V.     Disposition

¶ 44     The judgment is affirmed.

JUDGE HARRIS and JUDGE TAUBMAN concur.